490 A.2d 891

**COMMONWEALTH of Pennsylvania**

v.

**Thomas Charles JULIANO, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 11, 1984.

Filed March 22, 1985.

502

Donald B. McCoy, Newtown, for appellant.

Seth Weber, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before ROWLEY, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for possession of a counterfeit controlled substance and conspiracy.[1] Appellant contends, *inter alia*, that the evidence was insufficient to establish his possession of the contraband.[2] We agree and, accordingly, reverse.

In determining whether the evidence is sufficient in law to prove that a defendant is guilty beyond a reasonable doubt of the crime or crimes charged, we must, after a verdict of guilty, accept as true all of the evidence, direct or circumstantial, and all *reasonable* inferences arising from the evidence, upon which the trier of fact could properly have based the verdict.

*Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974) (emphasis in original).

So viewed, the facts are as follows: On October 3, 1981, Detective Joseph Dunner of the Bensalem Township Police Department was contacted by Mrs. Marlene Drueding of Bensalem. Mrs. Drueding informed Dunner that her son Edward was a drug dealer and was going to meet a Chris DiBona at the Philadelphia International Airport that evening, and that DiBona would be arriving at approximately 5:15 p.m. on a Delta Airlines flight. Mrs. Drueding based her information on a telephone call that she had received from DiBona the night before and on a phone conversation between her son and DiBona which she had overheard that morning. During this conversation, Mrs. Drueding overheard her son tell DiBona to bring the "white stuff," a term

---

1. Appellant was sentenced to two consecutive terms of one year probation.

2. Appellant also contends that counsel was ineffective in failing to raise a Rule 1100 issue and that the search warrant was invalid. Because of our disposition of this case, however, we need not address those claims.

which she knew to be the vernacular for cocaine. At approximately 2:30 p.m., Mrs. Drueding again contacted Dunner to tell him that her son had left the house with Joseph Cobuccio in a green Ford automobile with Pennsylvania registration # DCR171.

Dunner, along with Pennsylvania State Trooper Kenneth Anthony and Bensalem Police Officer Charles Maddocks (who knew both Drueding and Cobuccio by sight), proceeded to the Philadelphia International Airport and began surveillance of the Delta Airlines Terminal. At approximately 4 p.m., Edward Drueding and Cobuccio were observed near a refreshment stand in the Delta area. At 5:35, Drueding was observed meeting with DiBona who had arrived on the Delta flight. Drueding and Cobuccio were then observed going to the Delta baggage claim area. Several minutes later, they were seen leaving the baggage claim area carrying a green satchel-type bag with an airline ticket on it. Approximately 10 minutes later, Drueding and Cobuccio were observed driving out of the airport parking area in a green Ford with Pennsylvania registration # DCR171. The car proceeded to the Airport Sheraton Hotel, approximately one mile away, and stopped there just long enough to pick up DiBona and appellant, Thomas Juliano. The vehicle then proceeded north on I–95 and was stopped on I–95 in Bensalem Township, Bucks County, Pennsylvania, by marked State Police and Bensalem Township Police units. When stopped, the car was occupied by four men: Cobuccio in the driver's seat, Drueding in the front passenger seat, appellant in the left rear passenger seat (behind the driver), and DiBona in the right rear passenger seat. After the four got out of the car, police observed through the car window a green bag sitting on the floor in front of the left rear seat which appellant had been occupying. After a warrant was obtained, the police searched the car and seized the green bag along with a brown briefcase. The briefcase was found to contain appellant's papers and other items, but no contraband. The green satchel was found to contain unmarked articles of

clothing and 2002 white tablets, later identified as counterfeit methaqualone.[3]

On these facts, the lower court found that appellant had been in constructive possession of the green satchel containing the contraband and was therefore guilty of violating § 780–113(a)(16) of the Controlled Substance, Drug, Device & Cosmetic Act, as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

*      *      *      *      *      *

(16) *Knowingly or intentionally possessing a controlled or counterfeit substance* by a person not registered under this act, or a practitioner not registered or licensed by the appropriate state board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780–113(a)(16) (emphasis added). The term "possession" is statutorily defined as "an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S.A. § 301(c).

In narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband.... Proof of constructive or joint constructive possession of dangerous drugs requires evidence that the defendant, or in joint constructive possession cases, the defendant and others, had both power to control and the intent to exercise control over the narcotics. A necessary prerequisite of intent to control is proof that he had knowledge of the existence and location of the narcotics.... While a de-

**3.** At trial, appellant offered exculpatory evidence that he had met DiBona, an acquaintance, by chance at the Sheraton Hotel, and had accepted DiBona's offer to give him a ride to Atlantic City after appellant's date failed to show up at the hotel due to car problems. He denied any knowledge of the contents of the green bag found in the car.

fendant's mere presence among a group of people, all of whom had equal access to the contraband is not alone, persuasive evidence of constructive possession, the requisite knowledge and intent may be inferred from examination of the totality of the circumstances surrounding the case.... Location of the contraband in an area usually accessible only to the defendant may lead to the inference that he placed it there or knew of its presence if others did so.

*Commonwealth v. Thompson,* 286 Pa.Superior Ct. 31, 34–35, 428 A.2d 223, 224 (1981) (citations omitted). *See also Commonwealth v. Davis,* 308 Pa.Superior Ct. 431, 433–435, 454 A.2d 612, 613 (1982); *Commonwealth v. Hoetzel,* 284 Pa.Superior Ct. 623, 631–633, 426 A.2d 669, 673 (1981).

Here, while it is obvious that appellant knew of the existence and location of the *green satchel* which had been sitting at his feet during the car ride, we fail to see how appellant's knowledge of the *contents* of the green satchel could be inferred from the evidence of this case, even when such evidence is viewed in the light most favorable to the Commonwealth and drawing all *reasonable* inferences therefrom. Appellant was not implicated in the phone conversations reported by Mrs. Drueding, nor was he ever seen physically carry the green bag. In addition, when the police stopped the car, appellant made no furtive movements toward the bag and did not attempt to escape. Indeed, the only evidence tying appellant to the illegal drug transaction were his appearance with DiBona at the Sheraton Hotel, his presence in the car with the three men, and the fact that the green bag was found near where he had been sitting in the car. First, "[g]uilt by association ... is unacceptable." *Commonwealth v. Fortune, supra* 456 Pa. at 368, 318 A.2d at 328. Additionally, "mere presence of one person, among a group at a scene of contraband, is not a strong factor indicative of guilt." *Commonwealth v. Cash,* 240 Pa.Superior Ct. 123, 125, 367 A.2d 726, 727 (1976). Lastly, we do not believe that the location and proximity of the contraband alone should be conclusive of guilt. Here,

the green satchel was already in the car when the vehicle stopped at the Sheraton Hotel. Thus, it may have been only happenstance that appellant or DiBona got into the back seat of the car first and that appellant ended up occupying the left side near the green bag.

Our position is consistent with relevant caselaw. In *Commonwealth v. Armstead*, 452 Pa. 49, 305 A.2d 1 (1973), police officers stopped the car in which the defendant was a passenger and requested both the driver and the defendant to get out. No weapon was observed at that time. Then, a second police car arrived and, because the door of the stopped car was open, the arriving police officers saw a .38 caliber automatic pistol lying in the middle of the front seat. The Commonwealth argued by inference that the weapon must have been on the front seat next to the defendant during the time he was a passenger and that therefore he must have known of its presence. Our Supreme Court disagreed, stating that "[a]n equally logical argument can be made that the weapon was on the person of the driver during the time appellant was a passenger, and that the driver discarded the weapon as he got out of the car." *Id.*, 452 Pa. at 52, 305 A.2d at 2. In finding the evidence insufficient to sustain the defendant's conviction for unlawful possession of a firearm, the Court stated that "mere presence in an automobile in which a weapon is found is not sufficient to prove that a defendant-passenger is in possession of the weapon." *Id.*, 452 Pa. at 51, 305 A.2d at 2. In *Commonwealth v. Wisor*, 466 Pa. 527, 353 A.2d 817 (1976), the police found a pipe containing marijuana in the bottom of the well beneath the right front passenger's seat of the defendant's car. This space was only disclosed when the front seat was pushed forward. At the time of the search, the defendant was sitting in the driver's seat and there were five passengers in the car. The Supreme Court found the evidence insufficient to support the inference that the defendant was in constructive possession of the pipe. Because of the presence of other persons in the car, the Court reasoned that the defendant did not have exclusive control

of the area where the pipe was found, stating that "the fact of possession loses all persuasiveness if persons other than the accused had equal access with him to the place in which the property was discovered." *Id.*, 466 Pa. at 531, 353 A.2d at 818. In *Commonwealth v. Chenet*, 473 Pa. 181, 373 A.2d 1107 (1977), the evidence was found insufficient to sustain the defendant's conviction for possession of a controlled substance on the following facts: County deputy sheriffs obtained a search warrant for the defendant's trailer. Because the trailer was locked, they waited until the defendant's roommate arrived with his girlfriend before executing the search. The search disclosed marijuana seeds on the kitchen floor, marijuana cigarette butts in the living room ashtray, a "baggie" containing marijuana residue in the living room, and approximately 80 grams of marijuana in the milk delivery box attached to the trailer hitch. When the defendant arrived home, the officers arrested him and then obtained a warrant to search the car which the defendant had been driving. They found two marijuana cigarettes in the console between the front seats of the car. However, the car belonged to the defendant's attorney and the defendant had only picked up the car to repair it. The Court reasoned that all of the marijuana found in and around the trailer were in areas equally accessible to the defendant's roommate and his girlfriend. It also found that the Commonwealth failed to prove beyond a reasonable doubt that the defendant knew about the two marijuana cigarettes seized from his attorney's car.

Similarly, here, appellant was merely present in the automobile in which the contraband was found, there was no evidence that he knew of the presence of the counterfeit methaqualone in the green satchel, and the other three occupants of the car had equal access to the area in which the green satchel was found.[4] Therefore, on the facts of

4. Cases in which the evidence was found sufficient to sustain a conviction based upon the defendant's possession of contraband are distinguishable from the instant case. *See Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied*, 459 U.S. 1178 (1982) (when stopped by police, defendant was carrying a bag containing a

this case, we hold that the circumstantial evidence of appellant's guilt was insufficient to prove him guilty *beyond a reasonable doubt* of knowingly or intentionally possessing a counterfeit controlled substance.

Accordingly, we reverse the judgment of sentence and order appellant discharged.

hat removed from the burglarized home); *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981) (25 packets of heroin were found under the couch cushion in the "combination parlor-bedroom" of defendant's second floor apartment; although two other people were present in the apartment at the time of the search, one was on the third floor when police entered and the other was sitting in the kitchen staring into the oven); *Commonwealth v. Gray,* 322 Pa.Superior Ct. 37, 469 A.2d 169 (1983) (marijuana was found in the locked trunk of defendant's car which was placed on cinderblocks in the driveway of a residence occupied by defendant and another person); *Commonwealth v. Diaz,* 319 Pa.Superior Ct. 538, 466 A.2d 674 (1983) (during a routine search of defendant's closed but unlocked prison cell, a plastic bag containing 64 marijuana cigarettes fell from items of defendant's clothing in the cell); *Commonwealth v. Wilcox,* 310 Pa.Superior Ct. 331, 456 A.2d 637 (1983) (defendant was in exclusive possession of the vehicle stopped by police; a controlled substance was found in the cigarette case on the driver's seat by the officer who took control of the car while another officer was chasing defendant); *Commonwealth v. Thompson,* 286 Pa.Superior Ct. 31, 428 A.2d 223 (1981) (defendant, along with two other inmates, inside defendant's cell, were observed in possession of small packets of marijuana; a larger packet was observed in plain view on defendant's bunk); *Commonwealth v. Bentley,* 276 Pa.Superior Ct. 41, 419 A.2d 85 (1980) (a loaded handgun was found on the floor in front of the driver's seat in the car driven by defendant and registered to defendant's wife, two live bullets were found on the ground beside the driver's door, defendant and his passenger locked the car after exiting, and a gym bag containing another handgun was found in the tire well of the car); *Commonwealth v. Jones,* 250 Pa.Superior Ct. 236, 378 A.2d 914 (1977) (marijuana was found among defendant's personal effects in a place normally accessible only to defendant); *Commonwealth v. Ferguson,* 231 Pa.Superior Ct. 327, 331 A.2d 856 (1974) (defendant was the exclusive operator of a garage in which police located heroin in the supply room, in a loft in the back room, behind the water cooler, and underneath defendant's desk, which were all places to which defendant as operator of the garage alone would have access); and *Commonwealth v. Updegrove,* 223 Pa.Superior Ct. 7, 296 A.2d 854 (1972) (LSD

was found in a plastic box lying among defendant's personal effects
on the bedroom floor of the apartment to which defendant and
another person had free access).