J-A13016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYRONE BENJAMIN | |
| Appellant | No. 43 WDA 2015 |

Appeal from the Judgment of Sentence Entered December 2, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No: CP-02-CR-0005681-2013

BEFORE:  OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 24, 2016**

Appellant, Tyrone Benjamin, appeals from the December 2, 2014 judgment of sentence imposing 11 months and 15 days to 23 months of incarceration followed by two years of probation for carrying a firearm without a license (18 Pa.C.S.A. § 6106).   We vacate the judgment of sentence and order Appellant discharged.

The trial court summarized the facts in its Pa.R.A.P. 1925(a) opinion:

> On February 14, 2013, City of Pittsburgh Police Officer Dustin Rummel responded to the scene of a shooting in the 7200-7300 block of Hamilton Avenue in the City of Pittsburgh near the Phase 3 Bar.  The shooting occurred in the Homewood section of the City of Pittsburgh, which is known as a high crime area.  Officer Rummel arrived on the scene, accompanied by other officers, whereupon he observed an unknown female who had been shot in the leg.  Later that day, the officers learned that the body of a deceased male was found nearby.
>
> A witness to the shooting informed Officer Rummel that he heard five (5) gunshots come from a location near the Phase 3

Bar. The witness further relayed that three (3) black males fled from the location where the gunshots were fired. The witness observed three men retreat to two (2) vehicles: a dark sedan and a red Chevrolet Malibu. The witness reported that the three men fled down Hamilton Avenue in the direction of Washington Boulevard. Immediately upon learning of the vehicle descriptions, Officer Rummel put the information conveyed to him by the witness in a be-on-the-lookout ("bolo") notice on the police radio.

Officer Timothy Matson reported hearing the dispatch of Officer Rummel, as he was patrolling the 7200 block of Susquehanna Street with his partner, Officer Jonathon Craig. Officer Matson observed a maroon Malibu make a left turn on to Hamilton Avenue from North Homewood Street immediately following the dispatch. Officer Matson performed a stop of the vehicle, which was driven by [Appellant]. Officer Matson asked [Appellant] to exit the vehicle, whereby he was handcuffed and moved away from the vehicle. [Appellant] was removed from the area of the traffic stop a couple of cars behind, as the passenger of the vehicle, Mr. Wallace,[1] was uncooperative and disorderly. Officer Craig observed furtive movements made by Mr. Wallace, and removed him from the vehicle, whereupon Officer Craig located a firearm on Mr. Wallace's person, which had dropped from his waistband.

Believing the vehicle may have been involved in the shooting that took place minutes earlier, the officers made the decision to conduct an inventory search of the vehicle. During the inventory search, the officers learned that [Appellant] had a suspended driver's license, and Mr. Wallace was placed under arrest for a firearms violation. The inventory search also recovered a backpack with a firearm inside, which was recovered from the rear hatch area of the vehicle.

Trial Court Opinion, 11/15/16, at 2-3.

_____

[1] Elsewhere, the record identifies Appellant's passenger as Michael "Waller." N.T. Hearing, 6/3/14, at 33.

The Commonwealth did not charge Appellant with any crime arising out of the February 14, 2013 Homewood shooting. Rather, the Commonwealth charged Appellant with several firearms violations based on the firearm discovered in the backpack in the rear hatch of the Chevy Malibu. Appellant filed a pretrial motion to suppress the firearm, which the trial court denied on June 3, 2014. At the conclusion of a bench trial, the trial court found Appellant guilty of violating 18 Pa.C.S.A. §§ 6105 (persons not to possess a firearm) and 6106 (carrying a firearm without a license). The trial court imposed sentence as set forth above,[2] and this timely appeal followed. Appellant argues that the Commonwealth failed to produce sufficient evidence of Appellant's constructive possession of the firearm.

We apply this well-settled standard of review:

> Our standard of review for a challenge to the sufficiency of the evidence is de novo, but our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. The trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence.

**Commonwealth v. Robinson**, 128 A.3d 261, 264 (Pa. Super. 2015) (citations omitted).

---

[2] The trial court concluded the § 6105 offense merged for sentencing purposes.

Appellant's convictions under §§ 6105 and 6106 depend upon his constructive possession of the firearm in the rear hatch of the Chevy Malibu.

> When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession[.] Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control. [T]wo actors may have joint control and equal access and thus both may constructively possess the contraband. The intent to exercise conscious dominion can be inferred from the totality of the circumstances.

*Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005) (citations and quotation marks omitted).

The trial court relied on *Commonwealth v. Haskins*, 677 A.2d 328, 329-30 (Pa. Super. 1996), *appeal denied*, 692 A.2d 563 (Pa. 1997), in which police recovered cash and drug paraphernalia from the rear hatch of the defendant's Volkswagen Rabbit. Police approached the defendant's vehicle, which was stopped at a red light, and asked to speak to Appellant. *Id.* at 329. Appellant ran the red light and a chase ensued. *Id.* at 329-30. Defendant, who was driving, fled on foot from his moving vehicle. *Id.* at 330. Appellant's passenger fled on foot after the vehicle crashed into a parked car. *Id.* During the foot chase, the defendant discarded a plastic baggie containing marijuana. *Id.* On appeal, the defendant challenged, among other things, the sufficiency of the evidence of his possession of the cash and paraphernalia recovered from the rear hatch of his car. *Id.* In rejecting that argument, this Court reasoned that "the money and

paraphernalia found in the hatch area were located in areas usually accessible only to the operator of a vehicle." *Id.*

The Commonwealth relies on ***Commonwealth v. Bentley***, 419 A.2d 85 (Pa. Super. 1980). There, police recovered a .45 caliber handgun from a bag in the spare tire well of a station wagon. *Id.* at 87. The defendant driver's wife owned the vehicle, and an unidentified passenger was in the front seat. *Id.* at 86-87. This Court concluded, "the presence of a Colt .45 in a gym bag found in a portion of the vehicle not readily accessible to passengers would be sufficient to support an inference of [the defendant's] possession." *Id.* at 87. In addition, police found a .38 caliber handgun on the floor by the driver's seat. *Id.*

This Court distinguished ***Bentley*** in ***Commonwealth v. Juliano***, 490 A.2d 891 (Pa. Super. 1985). In ***Juliano***, the defendant joined several individuals who were under observation. *Id.* at 893. The other individuals were suspected of engaging in a drug transaction at an airport. *Id.* They picked up the defendant at an airport hotel. *Id.* When police stopped the vehicle, the defendant was one of four occupants. He was seated in the left rear passenger seat, and a green bag was on the floor at his feet. *Id.* Police observed other vehicle occupants carrying the bag before they picked up the defendant. *Id.* Police seized the green bag and found that it contained methaqualone. This Court vacated the defendant's conviction, reasoning that the Commonwealth produced no evidence the defendant

knew the content of the green bag, even though the bag was at his feet in the car. *Id.* at 894. We noted that the green bag was already in the car before the other occupants of the vehicle picked the defendant up. *Id.* "[T]he only evidence tying [the defendant] to the illegal drug transaction were his appearance [at the hotel], his presence in the car with the three men, and the fact that the green bag had been found near where he was sitting in the car." *Id.* "[M]ere presence of one person, among a group at a scene of contraband, is not a strong factor indicative of guilt." *Id.* (quoting *Commonwealth v. Cash*, 367 A.2d 726, 727 (Pa. Super. 1976)). Likewise, the *Juliano* Court noted that "mere presence in an automobile in which a weapon his found is not sufficient to prove that a defendant-passenger is in possession of the weapon." *Id.* (quoting *Commonwealth v. Armstead*, 305 A.2d 1, 2 (Pa. 1973)).

The *Juliano* Court relied on *Commonwealth v. Wisor*, 353 A.2d 817, 818 (Pa. 1976), in which the defendant driver and owner of the car was convicted of possession of a corncob pipe containing marijuana. The pipe was under the front passenger seat and became visible only when police pushed the seat forward. *Id.* Since the pipe was concealed, the trial court inferred that it belonged to the defendant (driver and owner) rather than any of the five passengers in the car in addition to the defendant. *Id.* Our Supreme Court disagreed, holding that "[t]he fact of ownership does not support the inference that [the defendant] knew the pipe was under the

seat." The Court further concluded that the vehicle's other occupants had ample opportunity to conceal the pipe. *Id.*

Appellant argues the foregoing case law does not control this case because of significant factual distinctions. First, the record indicates that Appellant was "very cooperative" with the police. N.T. Hearing, 1/6/15, at 18.[3] Police did not observe Appellant make any furtive movements. *Id.* at 34. Police determined that Appellant's sister owned the car. *Id.* at 21.

The police officer who searched the Chevy Malibu described its interior. "The vehicle doesn't have a closed trunk area. It has the front seat, the back seat and then the next area in the back is just a rear cargo area. It's accessible from the back seat. It's accessible from the vehicle. It's not closed off." *Id.* at 38. The backpack in the rear hatch was therefore accessible to anyone in the car. We observe that the record does not support the trial court's finding that the backpack was "well within reach of [Appellant]." Trial Court Opinion, 11/15/16, at 6. To the contrary, the record indicates that Appellant was in the driver's seat and the backpack was in an open hatch area behind the back seat. The Commonwealth conducted forensic testing of the firearm and discovered no fingerprint or any other evidence linking Appellant to the gun. Likewise, nothing in the record links Appellant to the backpack that contained the gun.

_____

[3] After the trial court denied Appellant's motion to suppress evidence, the parties proceeded to a bench trial on stipulated facts.

- 7 -

We conclude the trial court's reliance on **Haskins** is misplaced. In **Haskins**, the defendant ran a red light, fled his moving vehicle on foot, and discarded a bag of marijuana during the ensuing foot chase. Thus, the Commonwealth's case did not rest entirely on the defendant's presence in the hatchback vehicle. **Bentley** is easily distinguishable because nothing in that opinion indicated that the spare tire well was open and accessible to any vehicle occupant, as is the rear hatch of the Chevy Malibu involved in the instant case.

The trial court convicted Appellant largely because he was in control of the vehicle, and because he purportedly had the bag within reach. We have already concluded that the record does not support the latter finding. We further conclude that the trial court misapplied the law of constructive possession in finding that Appellant possessed the firearm. Appellant did not own the vehicle. No evidence linked Appellant to the backpack or the gun in the backpack. The rear hatch was open and accessible to anyone who entered the vehicle. Appellant, unlike his passenger, cooperated with the police. In summary, the record contains no evidence, other than Appellant's presence in the vehicle, linking him to the firearm. That evidence is legally insufficient to support a finding of constructive possession. We therefore vacate Appellant's judgment of sentence and order him discharged.

Judgment of sentence vacated. Appellant ordered discharged. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2016