J-S78039-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KAREEM LEE MIDDLEBROOK, | : | |
| | : | |
| Appellant | : | No. 1075 WDA 2017 |

Appeal from the Judgment of Sentence July 7, 2017
in the Court of Common Pleas of Indiana County
Criminal Division, at No(s): CP-32-CR-0001016-2016

BEFORE:    OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED JANUARY 17, 2018**

Kareem Lee Middlebrook (Appellant) appeals from the judgment of sentence of 2½ to 5 years of imprisonment following his jury convictions for possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia. Specifically, Appellant challenges the denial of his pre-trial suppression motion and the sufficiency of the evidence to sustain his convictions. We affirm.

The trial court summarized the underlying facts of this case as follows.

> On August 17, 2016, while on routine patrol duty, Trooper Donald Watters of the Pennsylvania State Police conducted a traffic stop of a 2008 Chevrolet Cobalt on State Route 422, in White Township, Indiana County, Pennsylvania. Trooper Watters observed the vehicle traveling at a high rate of speed, and then paced the vehicle for approximately four-tenths of a mile using the certified calibrated speedometer in his patrol vehicle; he determined that the vehicle was traveling at 80 miles per hour in a 65 mile per hour zone. Trooper Watters then initiated a traffic

*Retired Senior Judge assigned to the Superior Court.

stop by activating his emergency lights, and the Chevy Cobalt pulled to the highway berm approximately two-tenths of a mile from the State Route 286 exit.

Trooper Watters approached the vehicle on the driver's side; as he approached, he observed four (4) occupants, including the driver, in the vehicle. He also noticed that there was excessive movement inside the vehicle. Trooper Watters made contact with the operator and identified her as Amber Leigh Marchlewski of Indiana, Pennsylvania. The passengers were identified as Ryan Stepp (front seat passenger), Henry King (rear seat, passenger side), and [Appellant] (rear seat, driver's side).

After identifying the occupants, Trooper Watters went back to his patrol vehicle and called for backup. Trooper Shari Campbell arrived at the scene, and assisted Trooper Watters in taking the front seat passenger, Ryan Stepp, into custody because he was wanted for an alleged state parole violation. Trooper Watters then spoke to Ms. Marchlewski outside of her vehicle; he asked her questions about where she was coming from and where she was going, and he asked her questions about the occupants of her vehicle. Trooper Watters ultimately asked Ms. Marchlewski for permission to search her vehicle,[1] and she consented to the search.

_____

[1] The car was owned by Ms. Marchlewski's mother, but it was Trooper Watters' understanding that Ms. Marchlewski was an authorized driver of the vehicle.

Trooper Watters then ordered that the rear seat passengers, [Appellant] and King, exit the vehicle. [Appellant] stepped out of the vehicle first. Trooper Campbell was standing between the open door and the body of the vehicle, and observed a white bag of suspected heroin on the seat where [Appellant] was sitting. Trooper Campbell took possession of the bag of suspected heroin and placed [Appellant] under arrest.

Trial Court Opinion, 8/16/2017, at 2-4 (citations omitted).

Appellant was arrested and charged with the aforementioned crimes. Appellant filed a motion to suppress, in which he alleged that both the initial traffic stop and the subsequent search of the vehicle were illegal. After a hearing, his motion to suppress evidence was denied. Thereafter, Appellant was convicted following a jury trial. Appellant timely filed a notice of appeal.[1] Appellant presents the following issues for this Court's consideration: (1) whether the trial court erred in denying his suppression motion; and (2) whether the evidence was sufficient to establish constructive possession of the heroin found in the vehicle. Appellant's Brief at 5, 22.

We consider Appellant's suppression claims mindful of the following.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

---

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

- 3 -

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

Appellant concedes that the initial traffic stop was lawful. Appellant's

Brief at 12, 14. His challenge to the denial of his suppression motion can be

separated into two parts: (1) the detention after the stop; and (2) Ms.

Marchlewski's consent to search the vehicle.

We first address the detention. As discussed above, Trooper Watters

completed the initial traffic stop, but continued to engage with the occupants

of the vehicle until he asked Ms. Marchlewski for consent to search the

vehicle. Accordingly, the following principles govern our analysis.

> The Supreme Court in [*Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000)] ruled that after police finish processing a traffic infraction, the determination of whether a continuing interdiction constitutes a mere encounter or a constitutional seizure centers upon whether an individual would objectively believe that he was free to end the encounter and refuse a request to answer questions.
>
> Our Supreme Court adopted a totality-of-the-circumstances approach. It delineated a non-exclusive list of factors to be used in making this assessment. Those factors include 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location and time of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) "the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject

to police restraint," *id.* at 898; and 9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which "is a potent, objective factor." *Id.* at 899. Our Supreme Court also observed that when an individual has been subjected to a valid detention but police continue to engage the person in conversation, the person is less likely to reasonably believe that he is actually free to leave the scene.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1253 (Pa. Super. 2008).

Here, after processing the traffic infraction and ascertaining the identities of the individuals in the vehicle, Trooper Watters did not inform the occupants that they were free to leave. Rather, Trooper Watters called for backup, took the front seat passenger into custody on an active warrant, asked Ms. Marchlewski to step out of the vehicle, and inquired about her travels that day and the occupants of the vehicle. Based on the totality of the circumstances, we conclude that the occupants of the vehicle, including Appellant, were subject to an investigatory detention following the completion of the initial traffic stop. *See id.* at 1254 (finding that encounter was an investigatory detention where the appellant was not told that he was free to leave after his documents were returned, and the trooper inquired about his travels).

We next consider whether the detention was proper.

A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the

circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Id.* at 1255 (citations and quotation marks omitted).

Appellant argues that "[f]urtive movements and nervousness, standing alone, do not support the existence of reasonable suspicion." Appellant's Brief at 19 (quoting **Commonwealth v. Moyer**, 954 A.2d 659, 670 (Pa. Super. 2008)). However, the evidence presented at the suppression hearing established more than mere furtive movements and nervousness. Rather, the evidence established that: (1) Trooper Watters initiated a traffic stop for speeding; (2) the occupants of the vehicle exhibited excessive shoulder movement, fidgeting, nervousness, and hand shaking; (3) the backseat passengers avoided eye contact with Trooper Watters; (4) the front seat passenger had an active arrest warrant; and (5) the backseat passengers had multiple prior drug charges. N.T., 2/1/2017, at 10-11, 14-15. This evidence was sufficient to establish reasonable suspicion that the occupants of the vehicle were engaged in criminal activity. Thus, the detention was proper.

We next address Appellant's challenge to Ms. Marchlewski's consent to search the vehicle. "Establishment of the expectation of privacy in

a searched vehicle applies not only to drivers, but also to its passengers."

***Commonwealth v. Powell***, 994 A.2d 1096, 1104 (Pa. Super. 2010).

> [I]n order for a defendant accused of a possessory crime to prevail in a challenge to the search and seizure which provided the evidence used against him, he must, as a threshold matter, establish that he has a legally cognizable expectation of privacy in the premises which were searched.
>
> An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

***Commonwealth v. Viall***, 890 A.2d 419, 422 (Pa. Super. 2005) (citations

and quotation marks omitted). In that case,

> the drugs and drug paraphernalia were recovered from a common area in the backseat of the vehicle near where [Viall] sat. Also traveling with [Viall] were the driver, a front seat passenger and two other backseat passengers. We conclude that it would be unreasonable for [Viall] to have expected to maintain a privacy interest in objects which were placed inside the car and not shielded from the view of the many others occupying the same small space. Much like a co-inhabitant of a home assumes the risk that one of the residents may permit the common area to be searched, [Viall], as a co-occupant of the automobile, assumed the risk that the driver would permit the common areas of the car to be searched. Where joint access or control exists, there can be no reasonable or legitimate expectation of privacy. Thus, as we conclude [Viall] did not have a reasonable expectation of privacy in the area where the contraband was

recovered, the trial court rightly found he is unable to challenge the validity of the consent given to search that area.

890 A.2d at 423 (citations omitted).

Based upon **Viall** we conclude that Appellant has not established that he had a legally cognizable expectation of privacy in the backseat of Ms. Marchlewski's vehicle. Based on the foregoing, Appellant's detention was supported by reasonable suspicion, and the search of the vehicle was not illegal. Thus, the trial court did not err in denying Appellant's motion to suppress the search of the vehicle.

Lastly, we address Appellant's sufficiency-of-the-evidence claim. Appellant argues that the evidence was insufficient to prove constructive possession of the heroin found where Appellant was sitting.[2] Appellant's Brief at 28.

The standard we apply in reviewing the sufficiency of the evidence is whether

> viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

---

[2] The trial court failed to address this claim in its 1925(a) opinion.

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

Because the heroin was not found on Appellant's person, the Commonwealth was required to prove constructive possession.

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. … We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Brown***, 48 A.3d 426, 430 (Pa. Super. 2012) (quotation marks and citation omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."

***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted).

Appellant contends that "[t]he only circumstance connecting [Appellant] to the bag of heroin was the fact that it was located on the seat on which he was sitting and may have been under him, unless placed there by [Mr.] King after [Appellant] exited the vehicle." Appellant's Brief at 28. Appellant sets forth several possibilities of how the bag of heroin could have

been placed there without Appellant's knowledge, and argues that all passengers had equal access to the heroin. *Id.* at 28-29. Appellant concludes that "while the circumstances of where the bag of heroin was found in this case may be suspicious, conjecture and suspicion [are] insufficient to support a conviction." *Id.* at 29 (citing *Commonwealth v. Spencer*, 621 A.2d 153 (Pa. Super. 1993) (holding that evidence was insufficient to establish that defendant, who was a passenger in a vehicle, was in constructive possession of drugs found in armrest of door); and *Commonwealth v. Juliano*, 490 A.2d 891 (Pa. Super. 1985) (holding that circumstantial evidence was insufficient to find defendant, who was a passenger in a vehicle, was in constructive possession of items found within an unopened satchel by his feet)).

Our review of the record shows that it was reasonable for the jury to conclude from the evidence presented, giving credit to the officers' testimony and that of the vehicle's other occupants,[3] that Appellant constructively possessed the bag of heroin. The evidence demonstrated that as Appellant exited the vehicle, Trooper Campbell observed a clear plastic baggie with a white powdery substance lying on the seat exactly where

---

[3] *See*, *e.g.*, *Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa. Super. 2006) ("We may not weigh the evidence or substitute our judgment for that of the fact-finder. … When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence.").

Appellant had been sitting. N.T. 4/17/2017, at 18-21. It was obvious to Trooper Campbell that Appellant "was sitting directly on it" before he exited the vehicle. *Id.* at 29. The substance in the bag was tested and found to be 5.98 grams of heroin. *Id.* at 80. Ms. Marchlewski and the front seat passenger, Mr. Stepp, testified that they were under the impression that Appellant and Mr. King were involved in the heroin drug trade and they were being paid to drive Appellant and Mr. King from Pittsburgh to Indiana in order to sell heroin. Ms. Marchlewski and Mr. Stepp testified that the heroin found where Appellant was sitting was not theirs. *Id.* at 102-104, 107, 111.

It is well established that "the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Hughes***, 908 A.2d 924, 928 (Pa. Super. 2006).

Here, Appellant was **sitting directly on** a bag of heroin, and specifically was being driven from Pittsburgh to Indiana in order to sell that heroin. The evidence was sufficient to permit the jury to conclude that Appellant constructively possessed the heroin in question. Accordingly, Appellant's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/17/2018