J-S34017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y. J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Y. J., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 832 MDA 2025 |

Appeal from the Dispositional Order Entered April 25, 2025
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000331-2021

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:              **FILED: NOVEMBER 19, 2025**

Y.J. appeals from the trial court's dispositional order entered after the court adjudicated him delinquent following its finding that he carried a firearm without a license,[1] and committed related offenses.  As Y.J.'s challenge to the sufficiency of the evidence of his constructive possession of the firearm is unavailing, we affirm the dispositional order.

The factual and procedural history of this case is as follows.  Northern York County Regional Police Patrol Officer Jonathan Kane ("Officer Kane") was on patrol in the night in June 2021.  He had performed an unrelated traffic stop, during which Officer Anthony Gelbaugh ("Officer Gelbaugh") also responded in a separate vehicle, as is typical for late night stops, to park behind Officer Kane with his lights activated for safety purposes.  During the

---

[1] **See** 18 Pa.C.S.A. 6106(a)(1).

stop, a vehicle drove by in the adjacent lane at what Officer Kane later described as "either over the speed limit or not at a prudent speed." N.T., 4/25/25, at 11. The posted speed limit was thirty-five miles per hour. *See id*. at 10. Officer Gelbaugh estimated the speed of the vehicle was in the "upper 50s." *Id*. at 23. After the vehicle passed, Officer Gelbaugh initiated a traffic stop.

Upon stopping the vehicle, Officer Gelbaugh observed five people inside; Y.J. was the driver. *See id*. at 24. At the time of the stop, it was dark outside as well as inside the vehicle. *See id*. at 25. Y.J. did not have identification to present to Officer Gelbaugh, but gave his name and date of birth, which Officer Gelbaugh used to confirm his identity. *See id*. at 24-25. Officer Gelbaugh was able to determine Y.J. was seventeen years old, *see id*. at 28, and that the vehicle was registered solely to Y.J. *See id*. at 26. While Y.J. was unable to provide his driver's license, when Officer Gelbaugh asked for proof of insurance and registration, Y.J. opened the passenger-side glovebox, located in front of the passenger seat below the dashboard, and reached inside. *See id*. at 27. Officer Gelbaugh, who was shining his flashlight into the vehicle, was able to observe a firearm, specifically a handgun, in the glovebox. *See id*. at 28.[2] The handgun was black with duct tape around the grip. *See id*. at 29. It is unclear whether the gun was chambered, but it had four bullets

---

[2] The glove box was unlocked. *See* N.T., 4/25/25, at 53.

in the magazine. *See id*. at 30. Y.J. remained calm when Officer Gelbaugh discovered the firearm. *See id*. at 32.

Officer Gelbaugh immediately called for back-up, after the arrival of which they took the passengers, one by one, out of the vehicle, patted them down, detained them, and took possession of the firearm. *See id*. Officer Gelbaugh knew Y.J. was seventeen at the time he saw the firearm, which stood out to the officer, because "it is kind of a high crime area . . . [and] usually a [seventeen-]year[-]old doesn't have a handgun in their car," and a minor is incapable of possessing a firearm without a license. *Id*. at 29.

Officer Gelbaugh secured the firearm, and *Mirandized*[3] Y.J. and the other passengers of the vehicle. Officer Gelbaugh had Y.J.'s father on the phone while he spoke with Y.J. *See id*. at 31. Y.J. denied any knowledge of the gun and stated he did not know to whom it belonged. *See id*. at 32.[4] The other passengers likewise disclaimed knowledge that the gun was in the glovebox and indicated they did not know to whom it belonged. *See id*.[5]

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] The firearm was determined to belong to Thomas Hellwig, deceased, who has no known connection to Y.J. or any of the passengers in the vehicle. *See* N.T., 4/25/25, at 33-35. The gun was not reported as stolen. *See id*. at 33. The firearm appeared operable based on Officer Gelbaugh's handling of the gun, including that he was able to load and unload it. *See id*. at 39.

[5] The firearm was not DNA tested. *See* N.T., 4/25/25, at 55.

The Commonwealth alleged Y.J. committed the offenses of carrying a firearm without a license, as stated above, as well as possession of a firearm by a minor, *see* 18 Pa.C.S.A. § 6110.1(a), and a summary offense not germane to this appeal. *See* Pet. Alleging Delinquency, 4/17/25. Y.J. moved for suppression, which the trial court denied. *See* Adjudicatory/Dispositional Hr'g Order, 4/25/25. At the conclusion of the delinquency hearing, the trial court found Y.J. committed the firearms offenses, adjudicated him delinquent, and imposed probation until Y.J.'s twenty-first birthday.[6] Y.J. filed a post-disposition motion challenging the weight of the evidence, which the trial court denied. *See* Order, 5/22/25. Y.J. timely appealed, and both he and the trial court have complied with Pa.R.A.P. 1925.

Y.J. raises the following issue for our review:

> Was there insufficient evidence that Y.J. possessed the gun found in the unlocked glove compartment of his car where there were four others in the car, Y.J. was never seen placing the gun in the glove compartment or otherwise handling it, he made no furtive movements when pulled over, and the gun was never sent for DNA testing?

Y.J.'s Br. at 5.

Our standard of review for sufficiency claims is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it

---

[6] Y.J. turned twenty-one approximately one month after the delinquency hearing. *See* N.T., 4/25/25, at 83-84.

- 4 -

establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

Importantly, the fact-finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (internal citations, quotations, brackets, and indentation omitted).

Y.J.'s sufficiency challenge hinges on whether the evidence proved he constructively possessed the loaded firearm in the glovebox of the car he owned, given there were other passengers in the vehicle. This Court has set forth the relevant principles as follows:

This Court has held that possession can be found by proving possession, constructive possession, or joint constructive possession. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning

- 5 -

that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

**Wright**, 255 A.3d at 552–53 (internal citations, quotations, brackets, and indentation omitted).

We note, initially, that possession cases "turn on their individual facts[.]" **Commonwealth v. Ferguson**, 331 A.2d 856, 860 (Pa. Super. 1974). Additionally, this Court has held that "[t]he fact that the [defendant] was the owner and driver of the vehicle [is] rather strong evidence that he was aware of its contents[.]" **Commonwealth v. Gladden**, 311 A.2d 711, 713 (Pa. Super. 1973). Further, it is well established that the glove box and

hatch area are "areas usually accessible only to the operator of a vehicle." ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996).

This Court has found the evidence to be sufficient to show constructive possession where a defendant, for example, is one of several occupants of a car and makes furtive movements, and a firearm is found in that same area where the defendant had access, notwithstanding that it was an area accessible to other passengers. ***See Commonwealth v. Carter***, 450 A.2d 142, 147 (Pa. Super. 1982). However, where a defendant was a back-seat passenger, and contraband is located entirely within the front area, and there is no evidence linking the defendant in the back to the contraband in the front, this Court has held that the evidence was insufficient to establish knowledge or dominion and control over the contraband. ***See Commonwealth v. Parrish***, 191 A.3d 31, 37-38 (Pa. Super. 2018). This Court has also held that evidence was insufficient to show constructive possession where the defendant is the driver, but not the ***owner***, of a car, and a firearm is found under the driver's seat. ***See Commonwealth v. Hamm***, 447 A.2d 960, 962 (Pa. Super. 1982).

Y.J. argues the evidence was insufficient to support his delinquency adjudication. While he concedes ownership of the car, he notes there were four other people in the vehicle with him, he was not seen handling the gun or placing it in the glove compartment, he made no furtive movements, and there is no DNA evidence linking him to the firearm. ***See*** Y.J.'s Br. at 12. He

asserts that because there were five people in the vehicle, there was a "20% chance" the firearm was his. *Id*. at 14. He notes that anyone in the car could have put the firearm in the glove box because it was unlocked. *See id*. at 14-15. He argues the evidence was sufficient to establish "conjecture and suspicion" that the gun was his, but not to establish beyond a reasonable doubt he constructively possessed it.

The trial court considered Y.J.'s argument and concluded it merits no relief:

> In this present case, the [c]ourt holds that when reviewing the totality of the circumstances, the Commonwealth has established that [Y.J.] had constructive possession of the firearm for the following reasons: (1) the vehicle was registered solely to [him], (2) none of the other occupants in the car claimed ownership of the firearm, (3) [Y.J.,] as the owner of the vehicle[,] would have had access to the firearm in excess of any other individual in the car, and (4) [Y.J.] did not indicate any kind of surprise upon the officer locating or seeing the firearm. The [c]ourt is aware that there was a passenger in the passenger's seat at the time of this incident, however, that fact alone does not dissuade the [c]ourt's ruling that [Y.J.] was indeed in constructive possession of the firearm[,] as it has already been established by the [c]ourts that the concept of constructive possession allows for more than one possessor.

Trial Ct. Op., 7/3/25, at 4.

Based on our review, we conclude the circumstantial evidence, and reasonable inferences therefrom, in the light most favorable to the Commonwealth as the verdict winner, were sufficient to prove beyond a reasonable doubt Y.J. constructively possessed the firearm. We find **Ferguson** instructive. Therein, this Court affirmed the sufficiency of the

evidence of constructive possession of heroin found, *inter alia*, in the defendant's own desk in his garage, "a place usually only accessible to the defendant," notwithstanding his argument that fourteen people were seen entering and leaving his garage in the evenings preceding officers' discovery of the heroin, and that immediately before it was found, the defendant and a woman had just left the garage in his vehicle. *See id*. at 858, 860-61. Here, the totality of the circumstances included the following: Y.J. was the owner and driver of the vehicle, which is "strong evidence" of his knowledge of the vehicle's contents. *See Gladden*, 311 A.2d at 713. The glove box, where the firearm was found, is an area of the vehicle usually accessible to the operator. *See Haskins*, 677 A.2d at 330; *Ferguson*, 331 A.2d at 860. Additionally, when asked for proof of insurance and registration, Y.J. reached for the glove box, indicating that the firearm was kept along with Y.J.'s personal effects. Additionally, not only did Y.J. disclaim ownership of the gun, he also told Officer Gelbaugh "he had no knowledge it was in there or didn't know who it belonged to." N.T., 4/25/25, at 32. Yet notwithstanding Y.J.'s asserted lack of knowledge about the gun, he expressed no surprise about the gun's presence, but instead remained calm. *See id*. Lastly, Officer Gelbaugh observed neither Y.J. nor any of the other occupants of the vehicle making furtive movements or interacting with the glovebox at any point during the stop. *See id*. at 54, 57. Given Y.J.'s ownership and operation of the vehicle; the location of the firearm in an area usually accessible to the operator of the

vehicle; Y.J.'s stated lack of knowledge but inconsistent lack of surprise at the discovery of the firearm; and the absence of any evidence linking the other passengers in the vehicle to the firearm, we conclude the evidence—taken in its totality in the light most favorable to the Commonwealth, as required by our standard of review—is sufficient to sustain the trial court's finding that Y.J. committed a delinquent act. Having concluded Y.J.'s issue merits no relief, we affirm the dispositional order.[7]

Order affirmed.

_____

[7] Y.J. relies on **Commonwealth v. Juliano**, 490 A.2d 891, 893 (Pa. Super. 1985) for his claim that "mere awareness of the presence of something like a glove compartment cannot be equated with the ability and intent to control whatever is inside." Y.J.'s Br. at 14. However, **Juliano** is distinguishable, as in that case, Juliano was picked up by a vehicle and, as a passenger, occupied the rear left seat, in front of which was a green satchel containing contraband. This Court held that while it was obvious Juliano knew about the satchel, there was no evidence he knew about the contents of the satchel, and it was unknown if the bag had been in the car before he had entered. **See id**. at 894. Similarly, in **Parrish**, the defendant had been sitting in the back driver's side of a vehicle and police located contraband in the front of the car, and this Court held the evidence was insufficient to show Parrish constructively possessed the contraband because, *inter alia*, he did not have keys to the car and was not the owner or operator of it, and there was no evidence he had been in the front seats of the vehicle. **See** 191 A.3d at 38. Conversely, here, Y.J. was the driver and owner of the vehicle and the gun was found in the glovebox of his own car, with the attendant circumstances discussed above. Accordingly, Y.J.'s reliance on those cases is misplaced.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>11/19/2025</u>