J-S38004-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
DERRICK THOMPSON :
:
Appellant : No. 174 WDA 2017

Appeal from the Judgment of Sentence January 9, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011538-2016

BEFORE: BOWES, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.: FILED AUGUST 17, 2018

Derrick Thompson appeals from the January 9, 2017 judgment of sentence of eighteen months probation imposed after he was found guilty of two counts of person not to possess a firearm and one count of use or possession of electric or electronic incapacitation device.[1] We affirm in part and reverse in part.

The facts pertinent to our review are as follows. At approximately 6:30 p.m. on August 6, 2015, officers of the Allegheny County and Pittsburgh Police, accompanied by state parole agents, proceeded to 2729 Shadeland Avenue to serve an arrest warrant for Joshua Strayhorn. N.T., 9/29-10/3/17, at 55-56. Detective Steven Hitchings knocked on the front door. Cassandra

_____

[1] The court imposed a sentence of eighteen months probation at each count, to run concurrently.

_____

* Retired Senior Judge assigned to the Superior Court.

Good, one of the co-defendants and a resident of the home, answered.[2] Id. at 56-57, 61. After Detective Hitchings informed her that he had an arrest warrant for Strayhorn, Strayhorn appeared in the dining-room area, located near the stairs to the basement, and was taken into custody. Id. at 57.

After arresting Strayhorn, Detective Hitchings asked Ms. Good for permission to enter the home to search the area for police safety, and she consented. Id. at 62-63, 118. Pittsburgh Police Officer Joseph Barna went to the basement to clear the area of any possible persons for officer safety. Id. at 118, 150. The stairwell and basement were dark, so he utilized his flashlight as he proceeded down the stairs. Id. at 146. As he reached the bottom of the stairs, he turned right and saw Appellant through the entrance of a small, closed-off, room within the basement, which he later determined was a recording studio. Id. at 146, 158, 381. Appellant was seated at a desk, his back to the entrance, and he was wearing headphones. Id. at 118, 131. The studio contained a computer screen, some speakers, and one overhead light. Id. at 124, 146. Officer Barna testified that he noticed a firearm on the

_____

[2] The record reveals that Cassandra Good had been the lessee of the premises at 2729 Shadeland Avenue home for three years as of the date of trial, and that she resided there with her son, co-defendant Reginald Good, and grandson, Darwin Good. N.T., 9/29-10/3/17, at 183, 190, 213, 215, 299, 329, 341. The record indicates that Darwin Good was initially charged, but that those charges were dropped or dismissed.

desk inches in front of Appellant.[3]  Id.  The officer handcuffed Appellant for safety purposes, removed him from the studio, and brought him upstairs.  Id. at 118-19.  Officer Barna testified that, as he walked Appellant up the basement stairs, "due to his training and experience," he could see the extended magazine of a firearm protruding from the ceiling above the steps.[4]  Id. at 133.  Officer Barna also confirmed that he did not notice the hole in the dropped ceiling or the magazine protruding from it on his way down the stairs.  Id. at 147.  Pittsburgh Police Officer Jeffrey Tomer testified that when he and other officers were conducting a search of the residence pursuant to a warrant, the firearm in the ceiling of the basement was not visible from the basement.  Id. at 158.

---

[3] Officer Barna testified that there was a light in the recording studio and that he "could see [in the recording studio] without a flashlight, but a flashlight definitely helped."  Id.  Appellant confirmed that there was one overhead light bulb in the recording studio, "but it's not really that powerful."  Id. at 348-49.  Officer Tomer described the lighting in the studio as "dim."  Id. at 161.  Officer Paul Abel testified that, when they executed the warrant, the recording studio desk was "much tidier" than it was depicted in the defense photograph.  Id. at 386.  At trial, he placed a sticker on the photograph of the desk to indicate the location of the silver handgun.  Id. at 389.  He also pointed to the place on the desk where the stun gun was located that day.  Id.

[4] There was testimony from Officer Barna that it was dark in the basement and that he needed his flashlight to see what was around him.  N.T., 9/29-10/3/17, at 146.  He also testified that his flashlight was on as he was escorting Appellant from the basement, but it was after he saw the gun protruding from the ceiling that he illuminated it with his flashlight.  Id. at 134.

At the time of the raid, Appellant, Cassandra Good, Strayhorn, and two unnamed men were found in the home. Id. at 56-62. In addition to the aforementioned firearms, the police recovered a purple stun gun and a small amount of marijuana from the desk in the recording studio. Appellant was charged with offenses associated with those items. Police recovered several bricks of heroin[5] from the dropped ceiling adjacent to the basement stairs; a brick of heroin, $7,448 cash, a handgun, a purse containing marijuana, and indicia for Mr. Reginald Good from the third floor bedroom; and seven cellular phones from various locations throughout the home. Id. at 58, 125, 127, 164, 177, 179, 186-89, 190.

Appellant testified to the following uncontradicted facts. He was a self-taught sound engineer and had a production set-up at his home in North Versailles. Id. at 335-40. Appellant had a contract with Lake Street Entertainment, which was operated by Darwin Good, to perform services for the 2927 Shadeland Avenue Recording Studio, and he was given access to the residence on a regular basis to work in the studio. Id. at 341-43, 367-71. The contract term commenced on July 15, 2015, and was active at the time the residence was searched. Id. at 343. Appellant was supposed to be paid $2,000 for his services, but never received any compensation due to the raid. Id. at 370. At trial, he testified that he was only present at the Shadeland

_____

[5] The jury acquitted Appellant of constructive possession of the heroin that was discovered directly beside the firearm in the hole in the basement ceiling adjacent to the stairwell. N.T., 9/29-10/3/17, at 519-20.

- 4 -

Avenue home to fulfill his contract obligations. Id. at 341-42. Appellant further testified that he did not see any weapons in the recording studio or any guns or drugs in the ceiling adjacent to the basement stairs. Id. at 345-46.

According to Appellant, he arrived at the studio at 11:00 a.m. on August 6, 2015, and began mixing songs. Id. at 350-51, 367. At approximately 1:00 p.m., Strayhorn came into the basement to write a song, but he was "bouncing in and out," and Appellant did not take him seriously or pay attention to what he was doing. Id. at 352-53, 371-73, 381. Strayhorn left approximately one-half hour later. Id. at 372-73. Appellant did not see him bring a gun, or anything else, into the studio. Id. Strayhorn returned to the basement a second time and left around 1:45-2:00 p.m. and, once again, Appellant did not notice that he brought anything with him into the studio. Id. at 373.

Appellant was tried with co-defendants Cassandra and Reginald Good. In addition to the aforementioned charges, Appellant was charged with two counts each of carrying a firearm without a license and criminal conspiracy, one count each of possession with intent to deliver a controlled substance, possession of a controlled substance, possession of marijuana, and use/possession of drug paraphernalia. These latter charges were heard by a jury. At Appellant's request, the two counts of person not to possess and one count of possession of an electronic incapacitation device charges were severed for a concurrent bench trial. Prior to the jury verdict, the trial court found Appellant guilty of the severed charges; the jury found Appellant not

guilty of all charges before it.[6]  On January 9, 2017, Appellant was sentenced to eighteen months probation.  Appellant's timely-filed post-sentence motions subsequently were denied.

On January 20, 2017, Appellant filed a timely notice of appeal.  The trial court directed him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  On March 23, 2017, after receiving an extension, Appellant complied, and the trial court issued its Rule 1925(a) opinion.

Appellant raises one issue: "Did the [t]rial [c]ourt err in finding [Appellant] guilty of possession of a firearm [and electronic incapacitation device] when the evidence presented at trial was insufficient as a matter of law to sustain the conviction[s]?"  Appellant's brief at 3.

In evaluating a challenge to the sufficiency of the evidence, our standard of review is as follows:

> A claim impugning the sufficiency of the evidence presents an appellate court with a question of law.  The standard an appellate court applies in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, an appellate court may not weigh the evidence and substitute its judgment for the fact-finder.  In addition the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence . . .[T]he finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced,

---

[6] Both co-defendants were also found guilty by the court of all weapons charges and acquitted by the jury of all drug charges, with the exception being the charge of possession of a small amount of marijuana as to Ms. Good.  N.T., 9/29-10/3/17, at 517-20.

is free to believe all, part or none of the evidence. Commonwealth v. Antidormi, 84 A.3d 736, 756 (Pa.Super. 2014) (citations omitted).

Absent an abuse of discretion, a reviewing court will not reverse a trial court's determination of credibility. Commonwealth v. Hughes, 908 A.2d 924, 928 (Pa.Super. 2006). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Commonwealth v. Woodard, 129 A.3d 480, 494 (Pa. 2015).

At trial, Appellant stipulated to the fact that he was a person not to possess a firearm.[7] N.T., 9/29-10/3/17, at 22, 279. The three crimes of which Appellant was convicted were possessory offenses. See 18 Pa.C.S. § 6105(c)(1) ("A person who is a fugitive from justice . . . shall not possess, use, control, sell, transfer or manufacture . . . a firearm in this Commonwealth"); see also 18 Pa.C.S. § 908.1(c) ("No person prohibited from possessing a firearm pursuant to section 6105 . . . may possess or use an electronic incapacitation device"). Appellant challenges the sufficiency of

_____

[7] Appellant's status as a person not to possess a firearm was based on an outstanding arrest warrant for a simple assault charge that was later withdrawn. N.T., 9/29-10/3/17, at 279. The record does not reflect whether, at the time of the events herein, Appellant was aware of the bench warrant or its impact on his ability to lawfully possess a firearm.

- 7 -

the evidence that he possessed the firearms and stun gun.

The following principles inform our review. Where, as herein, the contraband was not found on Appellant's person, the Commonwealth has the burden of establishing that he had constructive possession of such contraband, i.e., that he had both the ability and the intent to exercise control over the contraband. See Commonwealth v. Dargan, 897 A.2d 496, 503, 504 (Pa.Super. 2006). As we explained in Commonwealth v. Brown, 48 A.3d 426, 430 (Pa.Super. 2012),

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

(internal quotation marks and citations omitted). In addition, mere presence in the vicinity of a recovered firearm is insufficient as a matter of law to establish possession. Id. In order to find the requisite power to control and the intent to exercise that control, the evidence must, at the very least, show that the defendant knew of the existence of the item. Commonwealth v. Gladden, 665 A.2d 1201 (Pa.Super. 1995) (citing Commonwealth v. Hamm, 447 A.2d 962 (Pa.Super. 1982)).

Constructive possession may also be proved by circumstantial evidence. Commonwealth v. Carter, 450 A.2d 142, 144 (Pa.Super. 1982). Individual

circumstances may not be decisive, but, in combination, they may justify an inference that the accused had both the power to control and the intent to exercise that control. Id. at 144. The concept of constructive possession is necessary to prevent persons from having "a privileged sanctuary for the storage of illegal contraband." See Commonwealth v. Macolino, 469 A.2d 132, 136 (Pa. 1983).

Herein, a handgun and stun gun were found on the desk in the recording studio at which Appellant was seated. Another handgun was found in the dropped ceiling near the stairwell providing access to the unlit basement. For ease of analysis, first we will discuss the items found in the recording studio.

With regard to the handgun and stun gun located on the desk, Appellant contends that the Commonwealth failed to prove that he had actual knowledge that they were there or the ability to control them required to establish constructive possession. He argues that the desk in the recording studio was cluttered, the room was dark enough for Officer Barna to need a flashlight, and "any number of people" had access to the studio. Appellant's brief at 12-13. Appellant maintains that, even though he was in close proximity to the weapons, the evidence presented at trial did not establish that he was aware of the existence of the weapons due to the lack of visibility in the room. Id. at 13.

In support of his argument, Appellant cites Commonwealth v. Rodriguez, 618 A.2d 1007 (Pa.Super. 1993), wherein this Court held that

mere access to and presence in an apartment in which contraband is located is not enough, on its own, to demonstrate constructive possession without a showing of actual knowledge. Appellant argues that the fact that he was found in a home with illegal weapons does not, without proof of actual knowledge, establish constructive possession. Appellant's brief at 13. Appellant maintains that, while the Commonwealth has demonstrated that he was in close proximity to a recovered firearm, "no evidence was ever presented to suggest that [Appellant] was aware of the firearm[,] much less that he had the power and intent to control it." Appellant's brief at 10.

In further support of his argument, Appellant cites Commonwealth v. Boatwright, 453 A.2d 1058, 1059 (Pa.Super. 1982)(holding that mere presence in the vicinity of a recovered firearm is insufficient as a matter of law to demonstrate possession), and Hamm, supra (holding that evidence of constructive possession was insufficient where there was not, at least, a showing of actual knowledge). Appellant's brief at 11. Appellant also relies upon Commonwealth v. Stembridge, 579 A.2d 901, 906 (Pa.Super. 1990), in which this Court held that where multiple people have access to recovered contraband, constructive possession can be attributed to the person with the greatest access to that contraband. Appellant points out that he was only one of six people in the home, and it was undisputed that he did not live there. He argues that Reginald Good or Ms. Good had greater access to any space of the home because they lived there. Appellant's brief at 13.

Further, Appellant notes that, in their examination of the recovered weapons, the police did not discover any fingerprints or DNA[8] matching his own. Id. at 14. While not dispositive under Pennsylvania law, Appellant argues that the presence of DNA is highly suggestive of possession and cites Commonwealth v. McClellan, 178 A.3d 874 (Pa.Super. 2018), where this Court sustained a conviction on a theory of constructive possession, which was supported entirely by the presence of DNA on the firearm. In response to these arguments, the Commonwealth points out that, when viewed in their totality, the facts and circumstances in Appellant's case supported the trial court's decision. Commonwealth's brief at 15.

The Commonwealth offered evidence that the firearm was in plain view on the desk. Officer Paul G. Abel, Jr. testified that the desk was not cluttered as depicted in photographs introduced by Appellant, and that the firearm and stun gun were visible. Id. at 174, 386-89. Officer Barna testified that there was sufficient light in the recording studio to enable him to see the firearm even without a flashlight. Thus, there was evidence from which the fact finder could reasonably infer that Appellant had knowledge of the firearm as it was in plain view. In light of our standard of review, we may not reconsider this credibility determination. Antidormi, supra.

_____

[8] Several officers/agents testified concerning fingerprint analysis conducted on the weapons. It appears that testing was completed, but the officers failed to ascertain the results of the testing. It is unclear from the record whether DNA analysis was requested. N.T., 9/29-10/3/17, at 111, 137, 225, 235, 267.

- 11 -

Furthermore, the trial court considered the possibility that Strayhorn could have entered the studio and placed the weapons on the desk without Appellant's knowledge, but apparently rejected that notion. Given our standard of review, we are bound by that determination. See Commonwealth v. Muniz, 5 A.3d 345, 349 (Pa.Super. 2010) (concluding that where trial court "no doubt considered the possibility" that another person placed drugs in appellant's room without his knowledge, but rejected that notion, we are bound by that determination).

Appellant argues further that the Commonwealth failed to prove the second element of constructive possession, i.e., that he intended to control the weapons. He relies on his own testimony that his intent was to fulfill a work contract. Appellant's brief at 14-15. He testified that he did not "root through" anything or care what was in the recording studio because he was "just there to work." N.T., 9/29-10/3/17, at 348. At trial, he offered into evidence a copy of his recording contract, signed by both parties, and demonstrated familiarity with the recording software used in the studio. Id. at 338, 341-42,

The Commonwealth established that Appellant knew of the weapons that were in plain view on the desk in front of him. Herein, the intent to control reasonably could be inferred from that evidence, together with evidence that they were located on the desk mere inches from Appellant's hands. See Commonwealth v. Flythe, 417 A.2d 633, 634 (Pa.Super. 1979)

("It strains the imagination to believe that [appellant] innocently entered this vehicle having no knowledge of the items found therein when, the pistol at least, was within a few inches of him and a portion of it was in plain view."). Thus, when viewed in their totality, the facts and circumstances support the trial court's determination that Appellant was in constructive possession of the firearm and stun gun found on the desk in the studio.

We find misplaced Appellant's reliance upon Stembridge, supra. Despite the fact that Appellant did not live in the Shadeland Avenue home, he had the greatest access to the recording studio on the day of the raid. By his own account, Appellant had been in the recording studio from 11:00 a.m. until 6:30 p.m. that day. N.T., at 350-51, 367. Although Strayhorn purportedly entered the studio that day, Appellant testified that he did not see him carrying any weapons. Furthermore, at the time of the raid, Appellant was alone in the recording studio, and had exclusive control of that area. Id. at 118. Thus, the reasoning in Stembridge, supra, tends to support the finding that Appellant constructively possessed the handgun and stun gun located on the desk as he had the greatest access to those weapons.

With regard to the firearm retrieved from the dropped ceiling near the stairwell, we find that the Commonwealth failed to prove beyond a reasonable doubt that Appellant constructively possessed the firearm located in the ceiling adjacent to the stairwell. The pertinent evidence revealed that a second

firearm[9] was retrieved from the dropped ceiling adjacent to the stairwell that Appellant utilized to enter the basement where the recording studio was located. N.T., 9/29-10/3/17, at 133. It was undisputed that the basement and stairwell were dark and Officer Tomer confirmed that the firearm was not visible from the basement. Id. at 147, 158. Officer Barna noticed the firearm when he ascended the stairs, but not on his initial trip down the stairs. Id. at 147. Appellant was alone in the studio at the time of the raid. Id. at 118. The firearm was not dusty or covered in cobwebs. Id. at 147.

The Commonwealth argues that the stairwell was the only access to the basement. Furthermore, the physical appearance of the firearm did not suggest that it had been in the ceiling for an extended time. Moreover, since Appellant did not see Strayhorn bring any firearms into the basement, the Commonwealth contends that Appellant had both the capacity and intent to exercise control over the firearm. In support thereof, the Commonwealth directs our attention to Commonwealth v. Hutchinson, 947 A.2d 800, 806-07 (Pa.Super. 2008), where this Court vacated an order of judgment of acquittal on what the Commonwealth characterizes as similar facts demonstrating constructive possession.

Absent herein is any evidence suggesting that Appellant knew or was

_____

[9] Police discovered that the gun in the ceiling was registered to a Jonathan Hazley and that it had not been reported stolen. N.T., 9/29-10/3/17, at 196. However, the officers admittedly never checked to see if the gun owner could be reached for questioning. Id. at 197.

aware of the presence of the gun in the ceiling. Even viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the most that can be inferred regarding that firearm is that Appellant may have been able to see it when ascending the basement stairs. Several police officers testified that the basement and stairwell were dark and the weapon was not visible from the basement, let alone the enclosed recording studio. Id. at 147, 158.

No evidence was offered as to when the gun was placed in the ceiling, although the Commonwealth maintained that the absence of cobwebs or dust suggested that it had only recently been placed there. Id. at 150. Appellant testified that he was in the recording studio from approximately 11:00 a.m. until 6:30 p.m., and that he had not yet ascended the stairs that day. N.T., 9/29-10/3/17, at 351. Therefore, Appellant could only have known of the gun if he placed it there himself, or watched someone put it there, or if it was present and visible on another occasion when he ascended the stairs. Such inferences of knowledge cannot be fairly drawn from the Commonwealth's evidence. Furthermore, there is nothing upon which to base a reasonable inference that Appellant had the ability, let alone intent, to control that weapon.

We find Hutchinson, supra, relied upon by the Commonwealth, to be factually distinguishable. Therein, we found sufficient evidence of constructive possession based on evidence that police officers saw the defendant count

money in the park at night, reach into the beams of a pavilion from which cocaine was later recovered, and then flee when he noticed the officers approaching him. On those facts, one could reasonably infer that the defendant had the requisite knowledge and ability to control the cocaine, as well as the intent to exercise it. Those facts are not present herein.

Accordingly, we reverse Appellant's conviction on one count of person not to possess a firearm as related to the firearm in the basement ceiling, vacate his sentence on that count, and affirm judgment of sentence in all other respects. Since Appellant's sentence on the one person not to possess count ran concurrently to the sentence imposed at the other counts, our reversal does not disturb the overall sentencing scheme, and no remand for resentencing is required.

Affirmed in part, reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2018