579 A.2d 901

**COMMONWEALTH of Pennsylvania**

v.

**Earnest Ray STEMBRIDGE, Appellant.**

Superior Court of Pennsylvania.

Argued April 18, 1990.

Filed Aug. 21, 1990.

John C. Marston, Doylestown, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Warrington, for Com., appellee.

Before CAVANAUGH, ROWLEY and HUDOCK, JJ.

ROWLEY, Judge:

In this appeal from the judgment of sentence of three to six years imprisonment that was imposed following his conviction on charges of possession of a controlled substance, possession with intent to deliver, and possession of drug paraphernalia, appellant Earnest Ray Stembridge raises a single issue: whether the evidence of his constructive possession of the contraband was sufficient to sustain the verdict.[1] For the reasons set forth below, we affirm the judgment of sentence.

The events surrounding appellant's arrest are crucial to his argument on appeal. On June 18, 1988, at approximately 3:00 a.m., Officer Patrick Connell of the Bristol Township Police Department noticed a Jeep Wagoneer with two inoperative rear lights. As the vehicle was driven into a convenience store parking lot and parked directly in front of the store, Officer Connell followed. The area was well lighted, and Officer Connell was able to see that there was nothing on the ground in the area where the vehicle was parked. Three persons were in the vehicle: the driver, Frank Miller; Dorothy Mullineaux, who was seated in the front between the two bucket seats; and appellant, who was seated in the right front passenger seat. Officer Connell questioned the

---

1. In his brief, appellant raises a second issue: Was the police officer's act of ordering appellant out of the car an unreasonable intrusion upon his personal liberty? At oral argument, counsel for appellant withdrew this issue.

driver and learned that the driver had no proof of ownership, the vehicle was not legally inspected, and the registration plate did not match the vehicle. Appellant then became "loud, abusive and disorderly" (N.T. at 13), causing Officer Connell to radio for assistance. The three occupants remained in the vehicle until Officer Daniel Lenihan arrived several minutes later.

At Officer Lenihan's request, appellant got out of the vehicle on the passenger's side. At approximately the same time, Officer Connell asked the driver to step out on the driver's side, and the driver did so. Appellant went to the front of the vehicle, about ten feet to the right of Officer Lenihan and directly in front of the store, and leaned on a metal barrier between the store and the parking lot. Less than a minute later, as Officer Lenihan was speaking to Ms. Mullineaux and Officer Connell was speaking to the driver, Officer Connell observed appellant as he "was leaning against the posts and he got up off the post and put his hands in his pocket and fidgeted around, walked up a couple steps, walked back a couple of steps, and as he was doing that I told him to stand still, take his hands out of his pockets more than once" (N.T. at 34). Officer Lenihan immediately approached appellant, patted him down, and felt in the left rear pocket a bulge which he thought might be a weapon but which turned out to be two wallets, one of which contained a substance that proved to be methamphetamine.[2] Appellant was then arrested and placed in one of the patrol cars; the officers' testimony at trial suggests, but does not make absolutely clear, that both officers escorted appellant to the patrol car.

At some point in the sequence of events, Ms. Mullineaux was ordered to get out of the vehicle on the driver's side. While questioning Mr. Miller on the driver's side of the vehicle, Officer Lenihan noticed something underneath the passenger side of the car and directed Officer Connell to

2. The trial court subsequently granted appellant's motion to suppress the contents of the wallet. The suppression ruling is not at issue in this appeal.

retrieve the objects. Officer Connell did so, finding two syringes and a large plastic sandwich bag partially wrapped in a paper towel and filled with a substance subsequently identified as methamphetamine. He testified that the objects were located "[a]pproximately halfway into the passenger side of the car, maybe not even that" (N.T. at 23), "in the wheel well area where the fender of the car meets the door hinge, ... [not] by the tire" (N.T. at 24). Officer Lenihan identified the location of the contraband as being "about midway beneath the vehicle, ... in the area of the passenger's compartment ... [a]pproximately one foot ... back from the front wheels" (N.T. at 46).

Appellant was arrested for possession of the drugs and syringes found underneath the vehicle and was subsequently convicted by the trial court sitting without a jury. Post-trial motions were filed and denied, sentence was imposed on October 20, 1989, and this timely appeal followed.

Appellant contends that the evidence was insufficient to prove beyond a reasonable doubt that he had constructive possession of the drugs and syringes found beneath the vehicle. Constructive possession has been defined as "conscious dominion," which in turn has been defined as "the power to control ... contraband and the intent to exercise that control." *Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). It is a legal fiction, "an inference arising from a set of facts that possession of the contraband was more likely than not." *Id.* The purpose of the doctrine is to expand the scope of possession statutes to encompass cases in which possession at the time of arrest cannot be shown, but in which there is a strong inference that there has been actual possession. *Commonwealth v. Carroll*, 510 Pa. 299, 302, 507 A.2d 819, 820 (1986). Constructive possession may be established by the totality of the circumstances. *Commonwealth v. Mudrick, supra; Commonwealth v. Carroll, supra.*

It is the case, as appellant contends, that the "mere presence of one person, among a group at a scene of contraband, is not a strong factor indicative of guilt."

*Commonwealth v. Juliano,* 340 Pa.Super. 501, 506, 490 A.2d 891, 894 (1985) [quoting *Commonwealth v. Cash,* 240 Pa.Super. 123, 125, 367 A.2d 726, 727 (1976)]. In *Juliano,* police officers, having first obtained a search warrant, searched the car in which appellant and three others had been sitting and seized a satchel found on the floor in front of the seat that had been occupied by appellant. Appellant was subsequently convicted of possessing the counterfeit methaqualone tablets found inside the satchel. In its opinion reversing the judgment of sentence and discharging appellant, this Court observed that there was no evidence, such as furtive movements or an attempt at escape, from which it could be inferred that appellant knew of the contents of the satchel. *Id.* 510 Pa. at 506, 490 A.2d at 894. In the present case, appellant suggests that it would be equally unreasonable to infer from his mere presence that he had placed the contraband under the vehicle.

In this case, however, we have not only appellant's presence at the scene, but also appellant's movements as he reached into his pockets while walking back and forth in front of the vehicle. Appellant suggests that his actions were consistent with those of a person attempting to retrieve a cigarette from his pockets. The only reference at trial to such a possibility is the testimony given by Officer Connell on cross-examination, just after he had described appellant's movements at the front of the vehicle:

Q: Did he tell you he was going to have a smoke?
A: I don't recall.
Q: He said, "Can't I smoke"?
A: I don't recall that.
Q: Is it possible?
A: It's possible, but I don't recall.

N.T. at 34–35. Officer Connell's testimony offers no support for appellant's explanation of his behavior.[3]

In support of his argument, appellant also cites *Commonwealth v. Wisor,* 466 Pa. 527, 353 A.2d 817 (1976), for the

3. Our review of the record did not reveal any evidence indicating that appellant is in fact a smoker.

proposition that "[t]he fact of possession loses all persuasiveness if persons other than the accused had equal access ... to the place in which the property was discovered." *Id.*, 466 Pa. at 531, 353 A.2d at 818 [quoting *Commonwealth v. Davis*, 444 Pa. 11, 16, 280 A.2d 119, 121 (1971)]. In *Wisor*, the appellant had been observed sitting behind the wheel of a car, with five other persons in the car and another man standing outside on the right. When the right front passenger seat was pushed forward, a pipe containing marijuana residue was found beneath it. This Court held that because the other occupants of the car had had ample opportunity to place the pipe beneath the seat, appellant did not have exclusive control of the area where the pipe was found and the trial court's finding to the contrary was unsupported by the evidence. *Id.*, 466 Pa. at 531–32, 353 A.2d at 818–19. In the case before us, appellant contends that Ms. Mullineaux had at least as good an opportunity as he did to place the contraband beneath the vehicle, since she moved into the passenger seat after appellant got out of the vehicle and the door on the passenger side of the vehicle remained open.

When Officer Connell was asked about the position of the passenger side door after appellant had left the vehicle, he answered that he believed the door had been open (N.T. at 18). He also testified that when he spoke to appellant before appellant stepped out of the car, the window on the passenger side of the vehicle "very well may have" been down (N.T. at 57).

With regard to Ms. Mullineaux's location in the car, Officer Connell was asked whether "Mr. Miller or the woman [was] ever on the passenger side of the jeep vehicle"; he answered no (N.T. at 38). Whether the question referred to the inside or the outside of the vehicle is unclear. He also asserted that to his knowledge the woman was never seated on the passenger side of the vehicle (N.T. at 55). Officer Lenihan testified on direct examination that he ordered appellant out of the car and then turned and spoke to the woman "who was seated in the middle between

the seats ..." (N.T. at 41). Asked where she was when he went to pat down appellant, he answered "I believe she had moved from the center and was in the passenger seat at that point, the right passenger seat" (N.T. at 42). However, he subsequently testified that he could not recall whether, after appellant had been placed in the patrol car, Ms. Mullineaux was seated between the bucket seats or in the right passenger seat (N.T. at 46). On cross-examination, Officer Lenihan testified as follows:

Q: What you are saying is the woman was sitting in the passenger seat and when she was asked to exit the vehicle she actually climbed over those two gear shifts and went out the driver's side?

A: She was in the middle originally sitting on the hump. As I say, I don't recall if she got into the passenger seat or not. Officer Connell ordered her out of the vehicle, out the left side of the car, and that is how she exited the vehicle.

N.T. at 48. We are unable to discern in the officers' testimony any positive evidence that the woman was seated on the passenger side of the car.[4]

There is even less support in the record for appellant's theory that the driver could have thrown or kicked the contraband under the vehicle after he was ordered out of the car. There are no indications in the record that the driver engaged in suspicious behavior of any sort, and Officer Lenihan testified that when he returned to the driver's side of the vehicle after placing appellant in the patrol car, "the driver was outside of the car and had his hands on the hood, I believe" (N.T. at 46).

A review of case law pertaining to constructive possession indicates the difficulty of drawing bright lines in this area of the law. In *Commonwealth v. Thomas*, 254 Pa.Super. 505, 386 A.2d 64 (1978), for example, police officers stopped a car being driven by appellant and, as they approached the car, saw appellant reach down with his right arm and hand toward the gas pedal. Upon searching the

---

4. Neither Ms. Mullineaux, Mr. Miller, nor appellant testified at trial.

car, the officers found a package containing heroin in the vicinity of the gas pedal. Although another person had been in the car with appellant, this Court held that the jury could reasonably have inferred from the evidence of appellant's proximity to the location of the drugs and his reaching in that direction immediately before the drugs were found that appellant had controlled the heroin and intended to exercise that control. *Id.,* 254 Pa.Superior Ct. at 509, 386 A.2d at 66.

In *Commonwealth v. Boatwright,* 308 Pa.Super. 41, 453 A.2d 1058 (1982), this Court reached a different result on somewhat similar facts. A police officer responded to a call concerning three "suspicious" men in a parked car and, approaching the car, saw appellant, seated in the front passenger seat, "moving towards his left rear." *Id.,* 308 Pa.Superior Ct. at 42, 453 A.2d at 1058. The officer saw only the movement of appellant's body, not his hand or arm. Another passenger occupied the left rear seat. On the left rear floor the officer found a gun, which was registered to a person not in the car. This Court held that the testimony of the police officer as to appellant's movement toward the left rear of the vehicle, which was the only evidence other than appellant's mere presence to connect him with the firearm, was insufficient to prove appellant's possession of the firearm beyond a reasonable doubt. *Id.,* 308 Pa.Superior Ct. at 43, 453 A.2d at 1059.

In *Commonwealth v. Cruz Ortega,* 372 Pa.Super. 389, 539 A.2d 849 (1988), police officers had received a tip that cocaine was located in a car being driven by one Rolando Martinez. The officers followed the car and, shortly before it came to a stop, observed appellant, sitting in the front passenger's seat, leaning over his seat. Appellant was subsequently convicted of possessing the cocaine found under his seat. This Court affirmed the judgment of sentence, noting that "constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." *Id.,* 372 Pa.Superior Ct. at 393, 539 A.2d at 851 (quoting *Commonwealth v. Mudrick,* 510 Pa. at 309, 507 A.2d at 1214). Pointing out that the glove compartment of the rented car contained a money

order purchased by appellant, the Court concluded that appellant had as much control of and access to the vehicle as did Martinez. As to the cocaine itself, the Court explained that "[t]he cocaine was found under the seat in which appellant was sitting. Before police stopped the vehicle, appellant was observed leaning over in his seat. We conclude that this evidence is sufficient to establish access to and control of the contraband." *Id.*, 372 Pa.Superior Ct. at 393 n. 1, 539 A.2d at 851 n. 1.

Applying the lessons of these cases to the evidence in the case before us, and reviewing the evidence and the reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Taylor*, 324 Pa.Super. 420, 424, 471 A.2d 1228, 1229 (1984), we conclude that the evidence was sufficient to prove appellant's constructive possession of the contraband found underneath the vehicle. Appellant's access to and control over the area in which the contraband was found was greater than that of the driver and the other passenger, inasmuch as appellant was the only one of the three to exit the vehicle on the passenger side. In addition, only appellant was observed walking back and forth near the car and "fidgeting around."[5] Furthermore, any uncertainty as to whether the female passenger moved from between the front seats into the right passenger seat, while it could have formed the foundation of a reasonable doubt on the part of the factfinder, does not as a matter of law create a reasonable doubt which requires us to overturn the factfinder's verdict. Accordingly, having found appellant's argument to be without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

CAVANAUGH, J., files a dissenting opinion.

[5.] The dissenting opinion does not mention the testimony concerning appellant's suspicious movements, nor does it acknowledge that Officer Lenihan eventually admitted his inability to recall whether the female passenger, who was initially seated between the front seats, had ever moved to the passenger seat on the right. In light of this testimony, we do not agree that the female passenger "had as much access to the area where the contraband was found as did appellant" (Dissenting Opinion at 10).

10

CAVANAUGH, Judge, dissenting:

I disagree with the majority's conclusion that the evidence was sufficient beyond a reasonable doubt to support a finding of constructive possession.

As the majority itself notes, the evidence adduced to support a finding of constructive possession was equivocal. Virtually all of the evidence cited by the majority was as consistent as not with a negative inference that the contraband was possessed by appellant. According to Officer Lenihan's testimony, the female passenger had moved from the center to the passenger seat, on which side the door was open and the window rolled down, and thus had as much access to the area where the contraband was found as did appellant. Under these circumstances, a reasonable doubt is raised as to whether it was appellant who was in constructive possession of the contraband. *See, Commonwealth v. Juliano,* 340 Pa.Super. 501, 490 A.2d 891 (1985); *Commonwealth v. Wisor,* 466 Pa. 527, 353 A.2d 817 (1976); *Commonwealth v. Boatwright,* 308 Pa.Super. 41, 453 A.2d 1058 (1982).

While it is true that we must view the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner, it is equally true that the Commonwealth has the burden of producing evidence sufficient to sustain its propositions beyond a reasonable doubt in the first instance. The entire tenor of the majority's opinion inferentially places the burden upon appellant to disprove rather than upon the Commonwealth to prove possession. I believe that this is error and therefore dissent.