J-S51043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRICK LAMAR KING, | : | |
| | : | |
| Appellant | : | No. 358 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 6, 2018
in the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0004202-2017

BEFORE:  PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: NOVEMBER 21, 2019**

Derrick Lamar King ("King") appeals from the judgment of sentence imposed following his conviction for persons not to possess firearms.[1]  We affirm.

At about 4:30 a.m., on August 27, 2017, Matthew Cavallo, a Wyomissing Police Officer ("Officer Cavallo"), was on patrol targeting particular areas of the borough.  He was parked in his unmarked police vehicle surveilling the parking lot of a Quality Inn, where he observed a black Toyota van with dark window tinting in the parking lot.  Officer Cavallo observed a person—later identified as King—enter the rear passenger side of the van, and followed the van for several blocks as it drove away.[2]

---

[1] **See** 18 Pa.C.S.A. § 6105(a)(1).

[2] The vehicle was later determined to be operating as a taxi-like service.

Subsequently, Officer Cavallo performed a traffic stop based upon a suspected violation of the Vehicle Code. As he approached the vehicle, he noticed the vehicle rocking back and forth as though a passenger in the vehicle was moving around inside. Upon reaching the vehicle, Officer Cavallo used his flashlight to look through the rear window where he observed, in plain view, King in the back seat of the van with a small amount of marijuana in his lap and kicking a wrapped object under the front passenger seat.

Officer Cavallo ordered King out of the vehicle, King complied, and Officer Cavallo detained King. Upon searching the vehicle, Officer Cavallo retrieved a revolver, which was wrapped in a white cloth and two plastic grocery bags, under the front passenger seat of the van. King was determined to have had a prior felony conviction and an active outstanding warrant, and was placed under arrest. Following King's arrest, Officer Cavallo sent the firearm and its ammunition for fingerprint and DNA testing. Relevantly, at some point prior to the firearm being tested, Officer Cavallo disposed of the white cloth and grocery bags in which the gun was wrapped.

King filed an Omnibus Pretrial Motion on November 14, 2017, including, *inter alia*, a Motion to suppress the evidence recovered from the vehicle based on Officer Cavallo's lack of reasonable suspicion to perform the traffic stop. The suppression court held a hearing on December 7, 2017, where it heard testimony from Officer Cavallo. On April 4, 2018, the suppression court issued an Order and accompanying Statement denying King's suppression Motion.

Following a jury trial, King was found guilty of persons not to possess firearms. On December 6, 2018, King was sentenced to 5 to 10 years in prison. King filed a post-sentence Motion on December 12, 2018, which the trial court denied on January 31, 2019. King timely filed a Notice of Appeal and a court-ordered Concise Statement pursuant to Pa.R.A.P. 1925(b).[3]

On appeal, King raises the following questions for our review:

A. Whether the [suppression court] erred in not granting the pre-trial Motion that the stop [of] the vehicle was without probable cause[,] and the fruits of said stop should have been suppressed?

B. Whether the Commonwealth committed a [**Brady v. Maryland**, 373 U.S. 83 (1963),[4]] violation and/or a violation of [King's] due process rights for their intentionally discarding by officers of the items holding the firearm[,] and[,] thus[,] effectively preventing [King] from being able to test those items for fingerprints or DNA[, which may have been] potentially exculpatory evidence?

C. Whether the evidence presented at trial was insufficient[,] as a matter of law[,] wherein the Commonwealth's evidence

_____

[3] We note that it appears that the trial court filed its Rule 1925(a) Opinion under the mistaken belief that King had not filed a Concise Statement. As a result, the trial court did not direct us to the places in the record where it states the reasons for its decisions. Though ordinarily the remedy for non-compliance with Rule 1925(a) is a remand to the trial court for preparation of an opinion, our review of the record and the trial transcript adequately apprises us of the trial court's reasoning, and we will review the merits of King's claims. **See Commonwealth v. Hood**, 872 A.2d 175, 178 (Pa. Super. 2005) (explaining that "the lack of a Rule 1925(a) opinion is not always fatal to our review, because we can look to the record to ascertain the reasons for the order.").

[4] In **Brady**, the Supreme Court of the United States held that suppression of evidence favorable to the accused violates due process when the evidence is material either to guilt or punishment. **Brady**, 373 U.S. at 87.

- 3 -

presented at trial failed to establish that [King] had possession of the alleged firearm?

D. Whether the verdict was against the weight of the evidence[,] wherein the verdict is so contrary to evidence and shocks one's sense of justice[,] where the Commonwealth's evidence presented at trial failed to establish that [King] possessed a firearm?

E. Whether the [trial] court's sentence was illegal, unconstitutional[,] and cruel and unusual[,] wherein the court failed to consider mitigating factors?

Brief for Appellant at 5-6 (capitalization omitted; footnote added).

In his first issue, King argues that Officer Cavallo's traffic stop for a window-tint violation was merely a pretense for a search of the vehicle's occupants, pointing to the fact that Officer Cavallo failed to issue a citation for or further investigate the vehicle's tinting. *Id.* at 12-14.

Our standard of review in addressing a challenge to the denial of a suppression motion is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

- 4 -

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010).

The Vehicle Code prohibits window tinting "which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e)(1). "When a police officer has reasonable suspicion that a violation of the [Vehicle Code] is occurring, he may stop a vehicle, upon request or signal…." 75 Pa.C.S.A. § 6308(b).

At the suppression hearing, Officer Cavallo testified that on the night of King's arrest, he was in an unmarked police vehicle across from the parking lot of the Quality Inn. N.T. (Suppression), 12/7/17, at 5. He observed a black Toyota van pull up to, and idle at, the front entrance of the hotel. ***Id.*** Upon observing the vehicle from his vantage point, he could not see the driver through the vehicle's tinted windows. ***Id.*** at 5-6. Officer Cavallo testified that in his experience, his threshold for conducting a traffic stop for illegally tinted windows is when he cannot see through the window into the vehicle. ***Id.*** at 7. When the vehicle left the parking lot—thereby entering a public roadway— Officer Cavallo testified that he followed the vehicle, again observing that the window tinting was beyond his threshold to suspect it exceeded the legal limits, and performed a traffic stop. ***Id.*** at 8-10.

In its Order and accompanying Statement, the trial court determined that Officer Cavallo had reasonable suspicion that the vehicle exceeded legal tinting levels when he performed the traffic stop, based on his inability to see or view the inside of the vehicle through its windows while it was operating on

a public roadway. Trial Court Statement of Findings of Fact and Conclusions of Law, 4/4/18, at 2. Upon review, we conclude that there is sufficient support in the record for the trial court's findings of fact based on Officer Cavallo's testimony, and discern no clear error in the trial court's conclusions of law. Thus, King is not entitled to relief on this claim.

King next mounts a **Brady** challenge, arguing that Officer Cavallo's disposal of the cloth and bags that contained the firearm constituted a destruction of potentially exculpatory evidence. Brief for Appellant at 14-15. Specifically, King argues that Officer Cavallo's decision to dispose of the materials, rather than submit them for DNA and/or fingerprint testing, deprived King of the opportunity to locate potentially exculpatory evidence. **Id.**

At trial, King's counsel cross-examined Officer Cavallo about the disposal of the cloth and bags, but did not object to the potential **Brady** violation at any point during the trial. **See** N.T., 10/30/18, at 123-24. King also did not raise the potential **Brady** issue in his post-sentence Motion, nor was the issue raised either at the December 6, 2018 sentencing hearing or the January 30, 2019 hearing to address the post-sentence Motion. Pa.R.A.P. 302(a) (stating that issues not previously raised in a lower court are waived). Though King does raise the **Brady** issue in his Concise Statement, we have stated that "[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." **Commonwealth v. Kohan**, 825 A.2d 702, 706

(Pa. Super. 2003).  Accordingly, this claim is waived.[5]

In his third claim, King argues that the evidence presented at trial was insufficient to convict him of persons not to possess firearms.  Brief for Appellant at 16.  King argues that evidence of constructive possession was insufficient because King was not the owner of the vehicle, the driver's testimony was not credible, and the statements he made to the arresting officers were not inculpatory.  *Id.* at 16-17.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial[,] in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

---

[5] We note that even if King's **Brady** issue had been properly preserved, the record does not indicate that he would be entitled to relief on appeal, as King concedes that the discarded evidence is merely *potentially* exculpatory, and the record contains no indication that Officer Cavallo acted in bad faith in disposing of the cloth and bags.  **See Commonwealth v. Chamberlain**, 30 A.3d 381, 402 (Pa. 2011) (holding that when the Commonwealth disposes of "'potentially useful' evidence, as opposed to materially exculpatory evidence, no violation of due process occurs unless the defendant proves that the Commonwealth acted in bad faith.").

*Commonwealth v. Stiles*, 143 A.3d 968, 981 (Pa. Super. 2016) (citation omitted).

A person commits the offense of persons not to possess if he (1) either has been convicted of a crime as defined in 18 Pa.C.S.A. § 6105(b), or is a person who meets the additional prohibitions as defined in 18 Pa.C.S.A. § 6105(c); and (2) possesses, uses, controls, sells, transfers, or manufactures a firearm in the Commonwealth. 18 Pa.C.S.A. § 6105(a).

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. ***Commonwealth v. Valette***, 613 A.2d 548 (Pa. 1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession.... As with any other element of a crime, constructive possession may be proven by circumstantial evidence. ***Commonwealth v. Macolino***, 469 A.2d 132 (Pa. 1983). The requisite knowledge and intent may be inferred from the totality of the circumstances. ***Commonwealth v. Thompson***, 428 A.2d 223 (Pa. Super. 1981).

*Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996).

The parties stipulated at trial to King's prior felony conviction, ***see*** N.T., 10/29/18, at 124-26, and it is uncontroverted that the firearm was not physically found on King's person. As a result, the Commonwealth was required to prove constructive possession at trial.

Officer Cavallo testified that as he approached the vehicle, he observed King kicking an object that he suspected to be a firearm wrapped in a bag, under the seat of the van. ***Id.*** at 102. Officer Cavallo removed King from the vehicle, detained him, and upon searching the vehicle, he located the firearm

under the seat in the same area where he saw King kicking. *Id.* at 106. After locating the firearm, Officer Cavallo testified that he had a conversation with King wherein King indicated that he "kn[ew] a place where he can get [Officer Cavallo] more guns," and provided Officer Cavallo with an address to that location. *Id.* at 109. Additionally, the driver of the vehicle testified that he had cleaned the vehicle prior to the start of his shift, and there was not a firearm in the vehicle when he started his shift. *Id.* at 88-89.

Viewed in the light most favorable to the Commonwealth, as the verdict-winner, we conclude that the evidence presented at trial was sufficient to establish King's constructive possession of the firearm. The circumstantial evidence and King's statement strongly implicated him as the possessor of the firearm. The Commonwealth presented sufficient evidence to establish that King had both the power to control the firearm and the intent to exercise that control. *See Haskins*, *supra*. As a result, King is entitled no relief on this claim. *See*, *e.g.*, *Commonwealth v. Stembridge*, 579 A.2d 901, 905 (Pa. Super. 1990) (holding that the defendant, who had been sitting in the passenger seat of a vehicle prior to the traffic stop, was in constructive possession of methamphetamine that the police found on the pavement under the passenger side of the vehicle, and stating that "[defendant's] access to and control over the area in which the contraband was found was greater than that of the driver and the other passenger[.]").

In his fourth claim, King argues that his guilty verdict was against the weight of the evidence. King's primary contention is that the evidence of his

constructive possession of the firearm could not be proven beyond a reasonable doubt. Brief for Appellant at 18. King argues that the totality of the circumstances and evidence created a verdict that shocks the conscience. *Id.*

Our standard of review for weight of the evidence claims is well settled.

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion. …
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. …
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Mucci*, 143 A.3d 399, 410-11 (Pa. Super. 2016) (quotation marks and citations omitted). In order to prevail on a weight of the evidence challenge, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003) (quotation marks and quotations omitted).

King's weight of the evidence claim is substantially identical to his sufficiency argument, but sufficiency and weight are distinct claims. *See Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (stating that "[t]he distinction between [weight and sufficiency claims] is critical."). To the extent that King challenges credibility determinations, the jury was free to weigh the testimony presented at trial by Officer Cavallo, the taxi driver, and King. *See Stiles*, 143 A.3d at 981. From the verdict, it is apparent that the jury found Officer Cavallo's testimony to be credible, and we may not reconsider the credibility of that testimony on appeal. *See Mucci*, *supra*. In particular, the testimony of King and Officer Cavallo contains significantly differing accounts of the traffic stop, and the jury's weighing of the testimony in favor of Officer Cavallo was not so contrary to the evidence that it shocks one's sense of justice. *See Sullivan*, *supra*.

Finally, King argues that the 5-to-10 year sentence imposed by the trial court was unconstitutionally cruel and unusual.[6] Brief for Appellant at 19. King argues that the trial court failed to "fully take into consideration[ King's] arguments for mitigation, or his circumstances." *Id.*

> It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal. Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely [filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for

---

[6] Although King also describes his sentence as illegal, the substance of his claim only challenges the discretionary aspects of his sentence.

- 11 -

allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Disalvo***, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

Here, King filed a timely Notice of Appeal, and preserved his claim of an excessive sentence in his post-sentence Motion. He also included in his appellate brief a separate Rule 2119(f) Statement. Therefore, we proceed to determine whether King has presented a substantial question that his sentence is not appropriate under the Sentencing Code.

In his Rule 2119(f) Statement, King claims that the trial court "failed to consider mitigating factors and circumstances" in imposing an excessive sentence. Brief for Appellant at 10-11. However, King does not identify any relevant mitigating factors which he believes the trial court failed to consider. At no point in his brief does King develop his claim in any colorable fashion, with citation to and discussion of relevant authorities. ***See*** Pa.R.A.P. 2119(a) (stating that all arguments must be "followed by such discussion and citation of authorities as are deemed pertinent"); ***see also Commonwealth v. Rodgers***, 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating that an issue is

waived if an appellant's brief does not include pertinent discussion of the point argued, with citation to authorities). Accordingly, King's final issue is waived.[7]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2019

---

[7] Even if King had preserved this claim, we would find no merit to his underlying allegation that the trial court failed to consider mitigating factors to his sentence. The trial court repeatedly stated that it reviewed the pre-sentence investigation report prepared for King prior to imposing its sentence, King's counsel provided argument regarding mitigating factors. *See* N.T. (Sentencing), 12/6/18, at 4-8; *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (explaining that "where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations…." *Commonwealth v. Devers*, 546 A.2d 12, 18-19 (Pa. 1988)).