J-S10040-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| NICHOLAS ODANE SIMPSON | : | |
| Appellant | : | No. 571 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 1, 2025
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0002528-2023

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: MAY 12, 2026**

Appellant, Nicholas Odane Simpson, appeals from the aggregate judgment of sentence of 48 to 96 months of incarceration imposed after he was convicted of possession of a controlled substance with intent to deliver ("PWID") and related offenses. On appeal, Appellant challenges the sufficiency of the evidence and an evidentiary ruling. After review, we affirm.

The trial court summarized the relevant facts of this matter as follows:

> Corporal Matthew Klaips ("Corporal Klaips") with the Pennsylvania State Police ("PSP") testified on behalf of the Commonwealth. N.T. 2/11/25 at 33-76. Corporal Klaips is a drug detection K-9 handler who has been with PSP for nine years and who has been doing narcotics investigation work for approximately six years. *Id.* at 33, 36. Corporal Klaips received various narcotics trainings to include the following: how to identify routes that criminal activity occurs on while coming from illegal drug source cities; how to identify legitimate versus illegitimate travel; and how to evaluate pre-stop indicators. *Id.* at 33-35. Corporal Klaips has

[made] approximately fifty arrests for drug[-]related traffic stops and fifteen of them resulted in felony arrests. *Id.* at 36.

On the afternoon of August 1, 2023, Corporal Klaips was stationary in his patrol vehicle facing south in the middle turning lane on State Route 115 in Bear Creek Township. *Id.* at 36. There was clear visibility that day and Corporal Klaips observed a silver Nissan Rouge with a New York registration pass his location. *Id.* at 36-37. Corporal Klaips noticed this vehicle because the driver of the Nissan had his eyes off the roadway for 3-4 seconds while turning his head during the pass staring directly at the Corporal; it was unusual for the driver of a passing vehicle to stare directly at Corporal Klaips in such a fashion. *Id.* at 37. Corporal Klaips began to follow behind the Nissan Rouge and observed the driver to be following too closely to a minivan in front of it so the corporal conducted a traffic stop. *Id.* at 37-38. The driver of the Nissan was identified by his California driver's license as [Appellant], Nicholas Odane Simpson, and the passenger was identified by his North Carolina driver's license as Stephen Graham ("Graham"). *Id.* at 38. The Nissan Rouge that [Appellant] was driving was owned by Graham's stepfather. *Id.* at 39.

While conducting the traffic stop, Corporal Klaips smelled an odor of marijuana and asked [Appellant] to step out of the vehicle. *Id.* at 43. Corporal Klaips searched [Appellant] for weapons with a negative result and asked [Appellant] to go over to the patrol vehicle with him to look up [Appellant's] identifying information. *Id.* at 42.

Corporal Klaips asked [Appellant] why he was in the area and how long he planned to stay. [Appellant] advised Corporal Klaips that he flew into John F. Kennedy airport in New York from California to visit his cousin Graham, that they were going to the Poconos, and that they were staying for 3-4 days. *Id.* at 42-45. [Appellant] also advised Corporal Klaips they were going to Madison Street in Wilkes-Barre city. *Id.* at 44. Corporal Klaips knew the area of Madison Street in Wilkes-Barre to be a place where narcotics are sold due to undercover work. *Id.* at 45. Corporal Klaips observed that there was no luggage in the vehicle, which is uncommon for a trip of that length. *Id.* at 43. Corporal Klaips testified that an individual conducting "a quick turnaround trip" would not have any luggage with them. *Id.* at 45-46. A quick turnaround trip is when the individual is picking something up from somebody in the source area, like New York, and bringing it to a certain location. *Id.* [Appellant] advised Corporal Klaips that he left his luggage at

his mother's and intended to buy clothes at Target and Marshalls. *Id.* at 43, 46.

During the encounter, [Appellant] appeared very nervous while continuously lifting up his shirt, touching his stomach area, stretching while putting his hands behind his back, and playing with his hair and fingernails. *Id.* at 42.

Corporal Klaips re-approached the Nissan to get the vehicle registration from Graham. *Id.* at 47. Graham advised Corporal Klaips that he did not know where he and [Appellant] were going, that they would be in the area for "a little while", and that [Appellant] lived somewhere in New York. *Id.* Corporal Klaips asked both Graham and [Appellant] if he could search the vehicle. Graham consented first whereas [Appellant] became agitated, delayed, but eventually agreed. *Id.* at 48. The Commonwealth marked and admitted into evidence certain dashcam MVR video from Klaips' PSP cruiser showing certain interactions with the [Appellant] and Graham during the stop. This was published to the jury.

During the search, Corporal Klaips found a "Maze Speed phone" box, which is a burner type-brand trac-phone, on the backseat floor behind the driver seat of the vehicle.[FN4] The box contained a bag of [896] Fentanyl pills hidden under the phone. *Id.* at 51, 80, 83. Both [Appellant] and Graham denied ownership or knowledge of the Fentanyl pills. *Id.* at 61. Corporal Klaips testified that [Appellant's] fingerprints were not found in or on the cellphone box nor on the plastic bag the Fentanyl pills were in, but that there were several unidentified fingerprints found on the cellphone box. *Id.* at 73, 75. The only fingerprints identified on the cellphone box [matched] an individual from Virginia that was never investigated further. *Id.* at 74-75. Additionally, found inside the vehicle was a marijuana joint, a ziplock bag with marijuana residue inside of it, and two cellphones. *Id.* at 7.

[FN4] On cross-examination, Corporal Klaips conceded that his report indicated that the box was found on the rear seat of the vehicle. This inconsistency was for the jury to resolve.

Detective Larry Whitehead with the Luzerne County Drug Task Force also testified on behalf of the Commonwealth. *Id.* at 93-111. Detective Whitehead was admitted as an expert witness in the area of drug investigations and interdiction. *Id.* at 102. It was the expert opinion of Detective Whitehead that the [896]

- 3 -

> Fentanyl pills possessed in this case were with the intent to deliver or distribute them. *Id.* at 106-109. Detective Whitehead came to this opinion based on the quantity of pills and how they were packaged inside the cellphone box hidden out of plain view. *Id.* at 106-108.

Trial Court Opinion ("TCO"), 8/13/25, at 2-4.

The jury found Appellant guilty of PWID,[1] possession of a controlled substance ("simple possession"),[2] and possession of drug paraphernalia.[3] N.T., 2/11/25, at 175-76. The trial court found Appellant guilty of the summary traffic violation of following too closely.[4] *Id.* at 184. On April 1, 2025, the trial court sentenced Appellant to a term of 48 to 96 months for PWID, 1 to 12 months for possession of drug paraphernalia to be served concurrently with the sentence for PWID, and a fine of $25.00 for following too closely. N.T., 4/1/25, at 5-6. Simple possession merged with PWID for sentencing purposes. *Id.* at 6.

No post-sentence motions were filed. On April 30, 2025, Appellant filed a timely appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

A. Did the Commonwealth fail to present sufficient evidence to establish, beyond a reasonable doubt, that the Appellant actually or constructively possessed illicit controlled substances and paraphernalia relative to Counts 1, 2, and 3 in violation of 35 P.S.

---

[1] 35 P.S. § 780-113(a)(30).
[2] 35 P.S. § 780-113(a)(16)
[3] 35 P.S. § 780-113(a)(32).
[4] 75 Pa.C.S. § 3310(a).

§ 780-113(a)(30), 35 P.S. § 780-113(a)(16), and 35 P.S. § 780-113(a)(32)?

B. Did the trial court err in allowing the admission of prior testimony of Stephan Graham where the admission of such testimony was contrary to and/or in violation of the Confrontation Clause of the United States Constitution, 6th Amendment, *Crawford v. Washington*, 124 S.Ct. 1354[, 541 U.S. 36] (2004) and the Pennsylvania Constitution, Article I, section 9?

Appellant's Brief at 3 (formatting altered).

Appellant's first issue presents a challenge to the sufficiency of the evidence underlying his possessory convictions for PWID, simple possession, and possession of drug paraphernalia. Our standard of review is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bernarsky*, 348 A.3d 304, 319–20 (Pa. Super. 2025)

(quoting *Commonwealth v. Furness*, 153 A.3d 397, 401 (Pa. Super. 2016)).

Sufficiency of the evidence presents a question of law, and our standard of review is *de novo*. **Id.**

Appellant challenges the sufficiency of the evidence underlying his convictions for simple possession, PWID, and possession of drug paraphernalia. The Controlled Substance, Drug, Device and Cosmetic Act ("Controlled Substance Act"), defines these offenses, in relevant part, as follows:

> [Simple possession:]
>
> Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16).

> [PWID:]
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

> [Possession of drug paraphernalia:]
>
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting,

ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32).

We note that

[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances. It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Commonwealth v. Parrish*, 191 A.3d 31, 36-37 (Pa. Super. 2018) (some formatting altered). Our Supreme Court "has recognized that [c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (citation omitted).

Furthermore, to find the evidence sufficient to sustain a conviction for PWID, "[t]he Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Brown*, 904 A.2d 925, 931 (Pa. Super. 2006). Moreover:

With regard to the intent to deliver, we must examine the facts and circumstances surrounding the possession. The intent to

- 7 -

deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors.

Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and ... the sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Commonwealth v. Roberts*, 133 A.3d 759, 768 (Pa. Super. 2016) (internal

citations omitted and formatting altered).

The trial court addressed Appellant's challenge to the sufficiency of the

evidence as follows:

In this matter, [Appellant] claims that there was insufficient evidence that he possessed the controlled substances and drug paraphernalia found behind his seat of the vehicle he was driving. Looking at the totality of the circumstances, the Commonwealth presented circumstantial evidence that [Appellant] constructively possessed the contraband.[FN5] For example, the manner in which [Appellant] stared at Corporal Klaips upon approaching and passing his patrol vehicle; the route [Appellant] was using to come into Wilkes-Barre from a known source city; the location [Appellant] was traveling to being known for narcotics trafficking; the lack of luggage although [Appellant] claimed they were staying for several days; [Appellant's] nervous behaviors during the encounter; the contradictions between the passenger's statement and [Appellant's] statements; and, that the box that contained the Fentanyl pills was visible and within reach of [Appellant].[FN6] While the individual weight of these factors may prove indecisive, when viewed together these facts and circumstances support a jury finding that [Appellant] knew about the contraband and had the intent to exercise control.[FN7]

- 8 -

[FN5] ***Commonwealth v. Cruz***, 21 A.3d 1247 (Pa. Super. 2011); ***Commonwealth v. Stembridge***, 579 A.2d 901 (Pa. Super. 1990).

[FN6] We also note that there was no evidence that [Appellant] expressed shock or outrage at the discovery of the [F]entanyl pills. He simply denied knowledge of them. In our judgment, the jury was entitled to consider that in its overall assessment of the facts and circumstances shown by the evidence.

[FN7] ***See Commonwealth v. DeCampli***, 364 A.2d 454, 457 (Pa. Super. 1976) (Individually, circumstances indicating constructive possession of contraband may not be decisive, but, in combination, they might justify inference that accused had both power to control and intent to exercise that control, the requirements to prove constructive possession.).

In our judgment, the Commonwealth presented sufficient circumstantial evidence to establish beyond a reasonable doubt that [Appellant] constructively possessed the controlled substances and drug paraphernalia. The Commonwealth is not required to prove its case beyond all doubt. This was not a case of mere presence as a passenger in an automobile. We recommend that our judgment of sentence be affirmed.

TCO at 7-8 (some formatting altered).

After review, we discern no error in the trial court's conclusions. ***Bernarsky***, 348 A.3d at 319-20. Corporal Klaips's observations regarding drug trafficking indicators, Appellant's implausible travel plans including having no luggage for an alleged three-to-four-day trip, Appellant's nervous demeanor and fidgeting, his access to 896 fentanyl pills, the fact that the pills were located in an area of the car to which Appellant as the driver had access, the expert testimony establishing that such a quantity of pills is consistent with distribution, Appellant's lack of surprise when the box was opened and revealed the pills, Appellant's travel from a source city, and the known

- 9 -

narcotics activity associated with Appellant's destination was sufficient, when viewed in totality, to permit the jury to find that Appellant knew the box contained contraband and exercised control over it and the bag containing marijuana residue, and that each element of PWID, simple possession, and possession of drug paraphernalia was established beyond a reasonable doubt. *See id.*; *Parrish*, 191 A.3d at 36-37. For these reasons, we agree with the trial court that, based on the totality of the circumstances and when viewed in the light most favorable to the Commonwealth, the evidence was sufficient to establish that Appellant constructively possessed the contraband. Accordingly, Appellant is due no relief on this issue.

In his next issue, Appellant argues that the trial court abused its discretion when it permitted the admission of Stephan Graham's statements to Corporal Klaips. Appellant claims the admission of Graham's statements violated the Confrontation Clause of the Sixth Amendment to the United States Constitution, the United States Supreme Court's decision in *Crawford*, and the Pennsylvania Constitution, Article I, Section 9. Appellant's Brief at 31-44.

We review Appellant's argument bearing in mind the following principles:

> A defendant's claim that he was denied his right to confront a witness under the Confrontation Clause of the United States and Pennsylvania Constitutions is a pure question of law for which our standard of review is *de novo*. *See Commonwealth v. Grush*, 295 A.3d 247, 250 (Pa. Super. 2023), *appeal denied*, 308 A.3d 770 (Pa. 2023). "The focus of the Confrontation Clause is testimonial hearsay." *Commonwealth v. Agnew*, 299 A.3d 1001, 1007 (Pa. Super. 2023) (citation omitted). Accordingly, the

Confrontation Clause is not implicated by the admission of non-testimonial or non-hearsay statements. ***See id.***

Testimonial statements are statements "made for the purpose of establishing or proving some fact." ***Commonwealth v. Yohe***, 79 A.3d 520, 531 (Pa. 2013) (quoting ***Crawford***[, 541 U.S. at 51]). To determine whether a statement is testimonial or nontestimonial, courts consider whether the statements were made for the primary purpose of establishing or proving past events potentially relevant to later criminal prosecution.[] ***Id.*** (quoting ***Davis v. Washington***, 547 U.S. 813 (2006)).

***Commonwealth v. Nabried***, 327 A.3d 315, 326 (Pa. Super. 2024) (some formatting altered). Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Accordingly, an "out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay." ***Commonwealth v. Rega***, 593 Pa. 659, 933 A.2d 997, 1017 (2007) (citing ***Commonwealth v. Sneed***, 526 A.2d 749, 754 (Pa. 1987)).

Appellant contends that "[p]rior to the beginning of testimony, counsel for the Appellant objected to the admission of statements made by Graham not only on the grounds that they constituted hearsay but also that they violated the Appellant's right to confrontation." Appellant's Brief at 31. The trial court ruled that Corporal Klaips could testify as to what Graham said to show its impact on Corporal Klaips's course of conduct and to explain the Trooper's continued investigation. ***See*** N.T., 2/11/25, at 7. Appellant argues that this ruling permitted inadmissible hearsay and violated the confrontation clause. Appellant's Brief at 31. We disagree.

The trial court addressed this issue as follows:

The statements by Graham regarding where he and [Appellant] were going, that they would be in the area for "a little while" and that [Appellant] lived in New York were not offered to prove the truth of the matter asserted. Instead, these statements were being offered to explain the Troopers' course of conduct, to explain the discrepancies with [Appellant] statement, and to explain the justification for further investigation and detention of [Appellant]. It is a longstanding rule of jurisprudence that an out-of-court statement being offered to explain the affiant's course of conduct in the investigation is not hearsay. *Commonwealth v. Rega*, 933 A.2d 997, 1017 (2007) (citing *Commonwealth v. Sneed*, 536 A.2d 749 (1987)).

Although [Appellant] here relies on *Crawford*, the instant case is distinguishable because the statement at issue in *Crawford* is one that implicated the defendant and is testimonial hearsay. *See Crawford*, 541 U.S. at 36, 51. Instead, this case is akin to *Rega*, where the trooper testified regarding the substance of his conversation with an individual to explain its discrepancies with the defendant's account and to explain the justification for further investigation of the defendant. *Rega*, 933 A.2d at 1017. The Pennsylvania Supreme Court found that this type of out-of-court statement was one that explains the affiant's course of conduct, is not hearsay, and does not violate, nor even invoke, the Confrontation Clause. *Id.*

TCO at 9-10.

After review, we discern no error or abuse of discretion. The statements Graham made did not implicate Appellant, and they were not offered for the truth of the matter asserted. Accordingly, we conclude that Graham's statements were neither hearsay nor did their admission violate the

- 12 -

Confrontation Clause. *See Crawford*, 541 U.S. at 36, 51; *Rega*, 933 A.2d at 1017. Accordingly, Appellant is entitled to no relief on this claim.[5]

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

---

[5] We note that Appellant also states that after the trial court permitted the introduction of Graham's statements, the Commonwealth later referenced those statements in its closing. Appellant's Brief at 33. Appellant asserts that "the use of the statements was for a different purpose than represented to the trial court at the beginning of trial is reflected in the closing statements of the prosecutor." *Id.* As noted above, Appellant objected to the initial introduction of the statements, and the trial court ruled that the statements were admissible for the purpose of showing Corporal Klaips's course of conduct. *See* N.T., 2/11/25, at 7. During Corporal Klaips's testimony, Appellant did not object or indicate that the Commonwealth was using Graham's statement beyond that permitted in the pre-trial ruling. Further, when the Commonwealth subsequently appeared to refer to Graham's statements in its closing, Appellant did not object on the grounds that the Commonwealth was utilizing these statements for a purpose that differed from the earlier ruling. In fact, Appellant did not raise any objection to the Commonwealth's closing. Accordingly, Appellant's argument that the Commonwealth used Graham's statement for a purpose beyond that permitted in the pre-trial ruling is waived on appeal. *See* Pa.R.A.P 302(a) (stating "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Sanchez*, 82 A.3d 943, 969-70 (Pa. 2013) (explaining "[t]his Court has long held that to preserve for appellate review an objection relating to the opening or closing address of opposing counsel, the objection must be specific and brought to the trial judge's attention as soon as is practical" and where an objection is not raised, the claim is waived).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/12/2026